143 N.J. Super. 387 (1976)
363 A.2d 357
ALONZO W. LAWRENCE AND JAMES SIMPSON, PLAINTIFFS,
v.
BAUER PUBLISHING & PRINTING LTD., A CORPORATION, KURT CHRISTOPHER BAUER, JEFFREY LANCE BAUER, PATSY BONTEMPO, "JOHN DOE" AND JOSEPH HARTNETT, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 16, 1976.
*388 Mr. James B. Flynn for plaintiffs (Messrs. Williams & Flynn, attorneys).
Mr. J. Roger Conant for defendant Bauer Publishing & Printing Ltd., Kurt Christopher Bauer, Jeffrey Lance Bauer and Patsy Bontempo (Messrs. Conant & McCreedy, attorneys).
Mr. Alan J. Karcher for defendant Joseph Hartnett (Messrs. Karcher, Reavey & Karcher, attorneys).
BRODY, J.J.D.R.C., Temporarily Assigned.
Plaintiffs commenced this libel action against a newspaper and some of its employees within the one-year limitations period. N.J.S.A. 2A:14-3. After the period they commenced an action *389 against Joseph Hartnett by filing an amendment to the original complaint. Hartnett now moves for summary judgment based on the bar of the statute. Plaintiffs claim the benefit of the "discovery" rule because they learned only five months ago that Hartnett was the newspaper's source of the allegedly libelous story. There is no genuine issue as to the facts material to a determination of the motion.
Plaintiffs were officers of the Rahway Taxpayers Association which opposed the city's plan to construct a new firehouse. The plan provoked controversy which received local notoriety. In furtherance of their cause plaintiffs filed with the city clerk petitions purportedly signed by Rahway citizens, demanding that the question be placed on referendum. Thereafter defendant newspaper published an article to the effect that it "learned" that city officials were questioning the authenticity of some of the signatures on the petitions and were investigating whether to prosecute plaintiffs. The story ran on January 9, 1975 under a headline: "CITY ATTORNEY RULES ASSOCIATION PETITIONS IMPROPER; FORGERY CHARGES MAY LOOM FOR LAWRENCE, SIMPSON."
Plaintiffs consulted an attorney (not their present attorneys), who wrote defendant newspaper a letter dated April 9, 1975 demanding a retraction. The newspaper responded by publishing an article in its April 17, 1975 edition reporting that it received the attorney's letter and pointing out that in publishing the story in January it was merely reporting what it had learned from "a source in the administration."
On May 8, 1975 plaintiffs commenced this action against the newspaper, its president, its editor, a reporter and "John Doe," described in the complaint as the fictitious name of an employee who was the "composer and writer" of the headlines over the January 9 and April 17 articles.
In time the plaintiffs began an inquiry of defendants to determine the name of the source of the story. Interrogatories were served August 15, 1975. On November 21, 1975 *390 defendants answered that the "lead of the article [was based on] the oral statements of a reliable and informed source." Depositions were conducted December 11, 1975, at which time the individual defendants declined to reveal the name of the "reliable and informed source." On December 31, 1975 plaintiffs filed a motion for an order compelling defendants to reveal the name and granting plaintiffs leave to add that person as a defendant by filing an amendment to the complaint. The motion was granted January 16, 1976. The source was identified February 10, 1976 as city Business Administrator Joseph Hartnett. The amendment to the complaint was filed May 11, 1976.
The substantive validity of the claim is not before me. For purposes of the motion it will be assumed that plaintiffs' claim against Hartnett did not accrue before April 17, 1975, the date of the second article which brought home to them, if the first did not, that the January story was based on a communication from a person outside the newspaper. Plaintiffs contend that the limitations period should start to run from February 10, 1976 when the original defendants disclosed Hartnett's name. Hartnett contends that the period should run from no later than April 17, 1975 when plaintiffs had reason to know they had a claim against a person other than the defendants already named in the suit.
The statute of limitations bars an action commenced out of time against an added defendant even though the action against the original defendant was timely. McGlone v. Corbi, 59 N.J. 86, 94 (1971). However, the statute does not begin to run until a claimant has reason to know he has a claim, unless defendant who is sued out of time can show he was thereby peculiarly or unusually prejudiced. Fox v. Passaic General Hospital, 71 N.J. 122 (1976).
Plaintiffs in this case cannot claim discovery later than April 17, 1975. They knew enough from the article published that date to articulate their claim against "a source in the administration," even though they did not know his true name. R. 4:26-4 permitted plaintiffs to issue *391 process against such defendant "under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him." Once plaintiffs, acting with reasonable diligence, ascertained Hartnett's name, the complaint could be amended by substituting his true name and the amendment would relate back to the filing of the complaint. Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111 (1973).
Our fictitious name practice requires that when a claimant is in a position to describe a defendant in terms of what he did or failed to do which gave rise to the claim, an action against that defendant must be commenced within the limitations period even though the claimant does not then know defendant's name. Because plaintiffs could have filed a complaint against Hartnett using a fictitious name in place of his true name, I hold that they were required to do so no later than April 17, 1976  one year after they certainly knew enough to describe him in accordance with the Rule. The amendment to the complaint filed May 11, 1976 is out of time.
Motion granted.