154 N.J. Super. 271 (1977)
381 A.2d 358
ALONZO W. LAWRENCE AND JAMES SIMPSON, PLAINTIFFS-APPELLANTS,
v.
BAUER PUBLISHING & PRINTING LTD., A CORPORATION, KURT CHRISTOPHER BAUER, JEFFREY LANCE BAUER AND PATSY BONTEMPO, DEFENDANTS, AND JOSEPH HARTNETT, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted June 13, 1977.
Decided November 23, 1977.
*273 Before Judges FRITZ, ARD and PRESSLER.
Messrs. William & Flynn, attorneys for appellants (Mr. Harry Green, of counsel; Mr. James B. Flynn on the brief).
Mr. Alan J. Karcher, attorney for respondent.
The opinion of the court was delivered by FRITZ, P.J.A.D.
This is an appeal[1] by plaintiffs from an adverse determination by way of summary judgment against them in a libel action. Most of the significant facts appear in the published opinion of the trial judge and we will not restate them. 143 N.J. Super. 387 (Law Div. 1976). We would add only that which we believe to be of substantial import and not the subject of comment in the opinion below: there is evidence which, if credited, might be found to demonstrate that the reluctance of deposed defendants to furnish the name of the "reliable and informed source" was produced by the specific request of Joseph Hartnett that he not "be revealed as the source." In this respect we observe that a court order was necessary to compel the ultimate identification of Hartnett as the "reliable and informed source."
*274 We do not quarrel with the determination of the trial judge that Farrell v. Votator Div. of Cheretron Corp., 62 N.J. 111 (1973), and R. 4:26-4 appear to control to defeat plaintiffs' argument that the statute of limitations did not commence to run until they discovered the name of the source, theretofore known to be "a source in the administration," but unnamed. It is entirely true that recent trends with respect to statute of limitations questions have extended such limitations by imposing discovery conditions upon their assertion in order to promote justice and afford equity, e.g., Moran v. Napolitano, 71 N.J. 133 (1976); Fox v. Passaic General Hosp., 71 N.J. 122 (1976); Lopez v. Swyer, 62 N.J. 267 (1973). Nonetheless, we are satisfied that our court of last resort has not yet abrogated the necessity for "John Doe" complaints where an ascribable defendant (and the cause of action against him, her or it) is known, although a precise name is not known. We concur generally with the trial judge that Farrell commands:
Our fictitious name practice requires that when a claimant is in a position to describe a defendant in terms of what he did or failed to do which gave rise to the claim, an action against that defendant must be commenced within the limitations period even though the claimant does not then know defendant's name. * * * [143 N.J. Super. at 391]
In such circumstance we may respectfully question the continuing soundness of the fictitious name practice and rhetorically inquire why the "discovery rule" of Moran, Fox and Lopez should not apply to names and actual identities as well as conditions, but we may not alter this rule of our court of last resort and we may not ignore it. In re Education Ass'n of Passaic, Inc., 117 N.J. Super. 255, 261 (App. Div. 1971), certif. den. 60 N.J. 198 (1972).
Accordingly, we confirm the determination by the trial judge that the statute of limitations should be deemed to run from no later than April 17, 1975.
On the other hand, Farrell also makes it abundantly clear that limitation statutes are "subject to later judicial interpretation *275 and application even though the interpretation and application have the effect of lengthening the defendant's jeopardy." 62 N.J. at 121 (emphasis supplied). While the statute involved, N.J.S.A. 2A:14-3, is unmistakable in its limitation of the commencement of actions to a period "within 1 year next after the publication of the alleged libel or slander" (thereby answering, perhaps the rhetorical question asked above), we think its application in matters in the courts should be made subject to the same concepts of justice as those which prompted Justice Jacobs to suggest in Farrell that when "the considerations of individual justice and the considerations of repose are in conflict * * * other factors may fairly be brought into play." 62 N.J. at 115. In our control of the proceedings in our courts toward the ends of the interests of justice, see Aruta v. Keller, 134 N.J. Super. 522 (App. Div. 1975), we believe ourselves to be at liberty to restrict the statute to the purposes for which it was designed: repose for the benefit of the individual whose conduct has not cost him the privilege, and to bring other factors into play toward that end when considerations of individual justice require. There is no longer any doubt that a defendant may be estopped from pleading the statute of limitations if he is guilty of inequitable conduct. Barres v. Holt, Rinehart & Winston, Inc., 131 N.J. Super. 371, 390 (Law Div. 1974), aff'd o.b. 141 N.J. Super. 563 (App. Div. 1976), aff'd o.b. 74 N.J. 461 (1977).
So we hold that with the spoken word  so boundless in its availability and so fraught with potential for harm in wrongful use  one who speaks respecting another and then actively hides his identity should not enjoy the benefits of repose to the detriment of one who is harmed and who, though diligent, is in fact the victim of the intended concealment. We recognize that considerations of individual justice in such case may be clearly paramount to considerations of repose, and the equitable doctrine of estoppel should be available to promote justice. While not entirely *276 analogous, State v. United States Steel Corp., 22 N.J. 341 (1956), is instructive:
* * * [S]tatutes of limitations are characteristically considered to be tools of repose. They require that alleged rights be timely asserted and thereby operate to prevent unjust claims. They obviate the difficulties in defending actions against such claims. Death or removal of witnesses, factual obscurity from lapse of time, loss of supporting records are the common handicaps. Tortorello v. Reinfeld, 6 N.J. 58, 67 (1950); State, by Parsons v. Standard Oil Co., supra, 5 N.J. 281, at page 295; 53 C.J.S., Limitations of Actions, § 1, pp. 902-903; Callahan, Statutes of Limitations  Background," 16 Ohio St. L.J. 130, 133 (1955). (The period of limitation is often geared to the perishable nature of the proof which normally accompanies a particular claim.) Where, however, the bar is used primarily as a sword rather than a shield and by one who has been responsible to disclose the actionable essentials in the face of a duty to speak, factors of vicarious enrichment become a dominant consideration which we are prone to remedy in equity and good conscience. Cf. Carrier v. Chicago, R.I. & P. Ry. Co., 79 Iowa 80, 44 N.W. 203 (Sup. Ct. 1890); Twining v. Thompson, 68 Cal. App.2d 104, 156 P.2d 29 (Ct. App. 1945). [At 358-359.]
Such a rule involves the identification, evaluation and weighing of equities, and its application may depend upon such considerations, among others, as diligence, good faith, and intentional concealment. For all the reasons set forth in Lopez, supra, 62 N.J. at 274-276, we think this can better be done by a judge than a jury, and that the determination as to whether this estoppel be invoked should be made by a judge.
Accordingly, we reverse the summary judgment entered below and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs.
ARD, J.A.D., (dissenting).
I must respectfully dissent from the opinion of my colleagues. The facts of this case do not warrant the invocation of the doctrine of equitable estoppel. Moreover, I find no basis or need to judicially interpret the language of the statute in question. I believe plaintiffs' cause of action against Joseph Hartnett is barred by the statute of limitations. N.J.S.A. 2A:14-3.
*277 The majority supports its reversal of the trial court by blending two theories which have no application to the facts of this case. It is suggested that the facts of this case warrent the invocation of the equitable doctrine of estoppel and that Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 121 (1973), "makes it abundantly clear that limitation statutes are `subject to later judicial interpretation and application even though the interpretation and application have the effect of lengthening the defendant's jeopardy.'"
Unlike the statute of limitations which governs negligence actions, I do not believe the language of the one-year statute which limits libel or slander actions is subject to judicial interpretation. The distinction between the statutes becomes obvious upon a comparison of the language. In N.J.S.A. 2A:14-3 (libel and slander statute), the language is as follows:
Every action at law for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander [Emphasis supplied]
The statute begins to run on "publication." The language is precise and definite. Justice Schreiber defined "publication" in his dissenting opinion in Barres v. Holt, Rinehart and Winston, Inc., 74 N.J. 461 (1977). The case dealt with the application of the "single publication rule" as it relates to N.J.S.A. 2A:14-3; however, the language is pertinent to the court's authority to judicially interpret the legislative intent.
* * * "Publication" is a word of art and refers to the distribution of written material or the transmittal of the spoken word to a third person. There can be no doubt that when the Legislature enacted the libel statute of limitations in 1934, L. 1934, c. 98, p. 287, publication occurred when the libelous material was communicated to a third person. Prosser, Law of Torts (4th ed. 1971) at 766-768; Gatley on Libel and Slander (5th ed. 1960) at 81-82; Townsend on Slander & Libel (3d ed. 1877) at 144-146. Each repetition of the defamation was a publication in itself. Restatement of Torts, § 578 (1938). Each constituted a separate cause of action. Odgers, *278 Libel and Slander 132 (6th ed. 1929); 1 Harper and James, The Law of Torts, § 5.15 (1956). So, although the period of limitations selected by the Legislature was relatively short, one year, still the wrongdoer was responsible for each libelous act though the damages were limited to those occurring within the applicable one year period. No sound reason has been advanced why the judiciary should now modify the Legislature's 1934 act. [at 463; emphasis supplied]
Quite different is N.J.S.A. 2A:14-2 (negligence statute) which states:
Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued. [Emphasis supplied]
In Fernandi v. Strully, 35 N.J. 434 (1961), the seminal case establishing the "discovery rule," our Supreme Court first examined whether it could interpret the negligence statute of limitations (N.J.S.A. 2A:14-2). The court said:
Although New Jersey's Legislature has provided that every action at law for injury to the person shall be brought within two years after the cause of action shall have accrued, it has, as pointed out earlier in this opinion, never sought to define or specify when a cause of action shall be deemed to have accrued within the meaning of the statute, nor has it ever expressed itself as to the effect to be given under the statute (N.J.S. 2A:14-2) to the fact that the injury was not known to or discoverable by the injured party within the period of two years. * * *
In the absence of legislative definition and specification, the New Jersey courts have often been called upon to delineate the statute; they have conscientiously sought to apply it with due regard to the underlying statutory policy of repose, without, however, permitting unnecessary individual injustices. In some instances they have determined that the period of limitations may justly be said to begin to run at a fixed date not necessarily related to the earlier date of the wrong and injury. * * * [at 449-450]
The court noted that the determination of when an action "accrues" is a judicial function and thus subject to court interpretation. It should be noted, however, that the court expressly stated that the interpretive function is only to be *279 utilized "[i]n the absence of legislative definition and specification, * * *." Unlike the negligence statute, the libel statute in this case is specific. The statute mandates that the action shall be commenced within one year after the publication of the alleged libel or slander. As Justice Hall stated in his dissent in Fernandi:
* * * Limitations of actions, created entirely by statute, are peculiarly legislative and not judicial acts. At common law there was no fixed time for the bringing of suits. [Citations omitted]. The judicial branch consequently does not have the responsibility for or freedom of development and change which it does when concerned with common-law principles originally judge made. When the Legislature has spoken clearly and fully, judges are obligated to follow, whether or not as individuals they agree with the enunciated policy either generally or as it may affect a particular case or class of cases. [at 453 dissenting].
In the case of the negligence statute there is a basis for judicial interpretation. Such is not the case with the libel and slander statute under consideration. There is no room for judicial interpretation, for the "Legislature has spoken clearly and fully." For these reasons I not only disagree with the majority but also the trial judge who, in my judgment, reached the proper result but inappropriately applied the discovery rule to this statute.
It should also be noted that we do not have considerations in this case which outweigh the need for repose and the basic necessity to heed the legislative mandate. In Fernandi the court took pains to point out that
* * * The circumstances do not permit the suggestion that Mrs. Fernandi may have knowingly slept on her rights but, on the contrary, establish that the cause of action was unknown and unknowable to her until shortly before she instituted suit. Justice cries out that she fairly be afforded a day in court and it appears evident to us that this may be done, at least in this highly confined type of case, without any undue impairment of the two-year limitation or the considerations of repose which underlie it. * * * [35 N.J. at 451]
*280 In the instant case plaintiffs did sleep on their rights. It should be emphasized that this is not a case where plaintiffs did not know of their injury before being barred by the statute. Rather, they did not know who did it, and accordingly had a remedy provided by the New Jersey Rules of Court, R. 4:26-4 provides:
In any action * * *, if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name, such motion to be accompanied by his affidavit stating the manner in which he obtained that information. * * *
The holding of Farrell v. Votator Div. of Chemetron Corp., supra, 62 N.J. 111 (1973), supports the use of R. 4:26-4. The language of the rule clearly indicates its applicability in a libel or slander action as well as one sounded in negligence or strict liability. The rule itself provides for the use of a fictitious name "[i]n any action other than an action governed by R. 4:4-5 (affecting specific property or a res), * * *." Thus, the considerations which called for relief from a strict interpretation of the statute in Fernandi have no application in the instant case. With the fictitious name rule available to plaintiffs, it is difficult to accept the majority's characterization of them as "diligent." Here, plaintiffs could adequately identify defendant at the time the second article appeared in the newspaper on April 17, 1975. The article stated that an official in the Rahway administration was the source of the information. This is an identifiable defendant. Plaintiffs were in a position to utilize R. 4:26-4. Furthermore, the "diligence" of the plaintiffs is extremely questionable when one considers that after obtaining Joseph Hartnett's name in February 1976, as a result of the court order, they did not amend their complaint until May 1976.
Finally, I do not believe the equitable doctrine of estoppel should be available to the plaintiffs under these circumstances. *281 One of the earliest cases, oft cited in New Jersey, which applied the equitable doctrine of estoppel to bar the defense of the statute of limitations is Noel v. Teffeau, 116 N.J. Eq. 446 (Ch. Div. 1934). In that case plaintiff had been struck by a car. The driver of the car did not stop although he had a statutory duty to do so. Two years later plaintiff discovered the identity of the driver who caused the accident. Notwithstanding the fact that the complaint was filed more than two years after the accident, the court invoked the doctrine of estoppel to prevent the driver from relying on the statute of limitations since he had a legal duty to come forward and identify himself at the time of the accident and did not do so. The driver's obligation to identify himself clearly distinguishes Noel from this case. I know of no legal or moral obligation on the part of Hartnett to identify himself as the newspaper source.
The same thing is true in the opinion cited by the majority, State v. United States Steel Corp., 22 N.J. 341 (1956). There again, estoppel was invoked to prevent defendant's reliance on the statute of limitations. But like Noel, defendant had a statutory duty to disclose certain facts concerning the existence of escheatable funds. In both Noel and State the keystone of the court's decision to invoke the doctrine of equitable estoppel was the failure of the defendant to affirmatively respond to a legal duty. In the instant case Hartnett had no duty to identify himself.
I fail to find anything reprehensible in Hartnett's understandable desire to remain anonymous. Furthermore, the record does not reveal any affirmative effort to conceal his identity. Hartnett requested that Ms. Contempo and Kurt Bauer not reveal him as the source of the information. From that point it was the newspaper which consistently refused to reveal the source of its information until required to do so by court order. The practicalities of the newspaper's refusal is demonstrated in the newspapermen's privilege contained in the New Jersey Rules of Evidence. Evid. R. 27. Obviously, there could be many reasons for the newspaper's *282 refusal to identify the source of a story having nothing to do with Mr. Hartnett. Under the circumstances it is difficult to accept the majority's pejorative characterizations of his silence. There is simply no evidence that Hartnett requested anonymity because he knew that he had libeled plaintiffs. Likewise, there is no evidence that he hid his name in order to avoid litigation. More importantly, Hartnett did nothing to prevent plaintiffs from commencing suit against him through the vehicle of R. 4:26-4.
In summary, I see no basis for distorting the clear intent of the Legislature. The sound reasons for broadening the limitation statute (N.J.S.A. 2A:14-2) by the discovery rule as enunciated in Moran v. Napolitano, 71 N.J. 133 (1976); Fox v. Passaic General Hosp., 71 N.J. 122 (1976); Lopez v. Swyer, 62 N.J. 267 (1973), and Fernandi, supra, have no application with respect to the statute of limitation governing libel and slander (N.J.S.A. 2A:14-3). The language of the latter statute is certain and unambiguous and there is no legal basis to carve out judicial exceptions to the legislative mandate.
Nor do the facts of this case warrant the application of the doctrine of equitable estoppel. Plaintiffs had the opportunity of amending the complaint to include Hartnett as a defendant within the time allowed by the statute of limitations had they diligently utilized the fictitious name device as provided in R. 4:26-4.
I would affirm.
NOTES
[1] This is another of the increasingly recurring cases of appeals from interlocutory orders without leave. Wholly improperly, appellants in this matter simply filed a notice of appeal. We would be entirely justified in dismissing the appeal out of hand. Frantzen v. Howard, 132 N.J. Super. 226 (App. Div. 1975). Although we will treat the notice of appeal as a notice of motion for leave to appeal, the matter of the interlocutory nature of the judgment having been raised by none of the other parties, and grant leave to appeal nunc pro tunc, the practice indulged in by counsel for appellants is unprofessional and not to be condoned.