Winfield O. KNIGHT and Audrey P.
Knight, Appellants in 86–5178,
Appellees in 86–5214,

v.

BROWN TRANSPORT CORPORATION,
Appellee in 86–5178, Appellant
in 86–5214.

Nos. 86–5178, 86–5214.

United States Court of Appeals,
Third Circuit.

Argued Oct. 27, 1986.

Decided Dec. 4, 1986.

**480**

James M. Marsh, Daniel P. Lynch (argued), LaBrum and Doak, Philadelphia, Pa., for Brown Transport Corp.

George J. O'Neill (argued), Philadelphia, Pa., for Knight.

Before ADAMS, HIGGINBOTHAM and GARTH, Circuit Judges.

### OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal presents a question as to whether, under the facts of this case, the New Jersey Supreme Court would hold that a defendant in a tort action such as this should be estopped from pleading a statute of limitations defense. Because the defendant, Brown Transport Corporation (Brown Transport), has argued that it is entitled to summary judgment as a matter of law, we present all disputed facts in the light most favorable to the plaintiff, Winfield Knight. Our standard of review is plenary.

#### I.

On November 18, 1978, Winfield Knight and Michael Miller were both injured while on duty in the Army Reserve. The army truck in which they were riding collided with a truck operated by John Farina. The truck bore the legend "Brown Transport Corp.—Elberton, Georgia."

Jeffrey Dragon was original counsel for Knight. George O'Neill, counsel for Knight in this appeal, was original counsel for Miller. Each attorney was separately retained to investigate and prosecute claims against those responsible for the accident in which their respective clients were injured. From the military authorities, each attorney obtained an accident report prepared by Johnny Askew, the driver of the army truck in which Miller and Knight were being transported at the time of the accident. This report stated that the tractor-trailer involved in the accident was owned by "Brown Transport, Elberton, Ga." The name of the driver of Brown Transport's tractor-trailer was not completely legible. Although the first name and middle initial were clearly recognizable as "John D.," the last name appeared to be either "Ferino" or "Ferind." Both Miller and Knight surmised that the last name could also be read as Perino, Felrino, Pelrino, Felrind, or Pelrind. Appendix at 94, 96.

After learning of each other's involvement in the investigation of the accident, Mr. Dragon and Mr. O'Neill reviewed each other's files and Mr. O'Neill agreed to supply Mr. Dragon with all information that he might be able to secure in the course of his investigation. Mr. O'Neill wrote to the Commanding Officer of Miller and Knight's army company on four separate occasions (before the two-year statute of limitations had expired) in an attempt to learn the correct name and address of the tractor-trailer driver. The military authorities provided no additional information, nor did they indicate that any other information was available.

Mr. O'Neill also telephoned Brown Transport and spoke to Art Morris, an employee in the claims department. Morris stated that Brown Transport had no record of any employee or lessee with any of the possible names set forth above. Mr. O'Neill wrote to Morris requesting any additional information that Brown Transport or its insurer might have. On August 14, 1979, Brown Transport replied:

We have researched each and every department of our company which would have possibly been using Mr. Ferind/Ferino etc. as a driver on the date of the accident, November 18, 1978, and have been unable to identify this man as an agent of ours in any capacity. We have also checked with the New Jersey Department of Motor Vehicles, and have been advised the tag on the tractor was registered to Mr. Frederick H. Hoag, Jr. This tag was expired, and again, researching our various departments, we have been unable to identify Mr. Hoag as an agent of ours. Please advise if your interview with Mr. Askew reveals any additional information as we are unable to identify this as our vehicle with the small amount of information provided.

Appendix at 100. Brown Transport sent a similar letter to Knight's counsel, Mr. Dragon, in reply to his inquiry. The letter to Mr. Dragon ended with the statement: "We regret that we are unable to assist you in this matter, and if you are in possession of any information to enable us to identify the driver, we will be happy to research our records once again. Please advise." Appendix at 102.

Mr. O'Neill continued to write to various agencies trying to ascertain the identity and address of the Brown Transport driver. Mr. O'Neill wrote to Mr. Hoag, who did in fact have the tag number set forth in Askew's accident report, but the tags were assigned to a 1974 Plymouth automobile, not a tractor-trailer. Hoag never owned nor drove a tractor-trailer. In keeping with his commitment, Mr. O'Neill kept Mr. Dragon informed of all of this investigative information.

From the results of these inquiries, Mr. Dragon concluded that the tractor-trailer driver had given a false name and address at the scene of the accident, had used false tags on his vehicle and, probably had falsified the Brown Transport sign on the vehicle. Because Mr. Dragon concluded that the United States Government was immune from liability and that there was no evidence against Brown Transport except the sign on the tractor-trailer, he advised Knight that nothing further could be done to prosecute his claim with any hope of success, and they terminated their attorney-client relationship in November of 1980 (the same month that the two-year statute of limitations on Knight's claim was due to expire).

Although Mr. Dragon possessed Brown Transport's address and its insurer's address and although he knew of Askew's report listing Brown Transport as the owner of the vehicle involved in the accident, Mr. Dragon did not file any suit against Brown Transport.

On the other hand, Mr. O'Neill, on the day before the statute of limitations expired, filed an action on behalf of his client, Miller, in the United States District Court for the District of New Jersey. This suit was filed against the United States, Excalibur Insurance Corporation, Brown Transport Corporation and "John D. Ferind or Perind or Felrind or Ferino or Perino or Felrino or Pelrino." Neither Mr. Dragon nor Knight was informed that Mr. O'Neill had decided to start such an action.

In May of 1981, Mr. O'Neill, during a conference with his client, informed Miller of his inability to secure an identification of the tractor-trailer driver. Mr. O'Neill showed his client the army accident report prepared by Askew. Miller stated that this report did not have all of the information obtained by the Military Police at the time of the accident. Finally, Miller himself went to Fort Dix, and he was able to obtain a copy of the full Military Police Report.

It was from this report that Mr. O'Neill obtained a legible name and address for the tractor-trailer driver. The driver was re-

ported to be "John D. Farina, 807 Mark Drive, Clearwater, Fla. 32809." The owner of the tractor-trailer was noted as "same as driver," not Brown Transport.

Brown Transport itself had hired Federal Investigators Network, Inc. to locate John D. Farina. On July 30, 1981, the investigators sent Brown Transport's attorney a letter stating that they had been able to communicate with Mr. Farina's wife. She stated that Mr. Farina "was an owner-operator, leased to Brown Transport," and that he had made a delivery to the Army base followed by the accident in question. Counsel for Brown Transport wrote to Mr. O'Neill on August 24, 1981. In that letter, Mr. O'Neill was informed of the existence of the investigation, that Mr. Farina's wife had been found, and that she acknowledged that her husband had been involved in an accident on the night in question. Mr. O'Neill was not informed of the fact that Mr. Farina's wife stated anything about a relationship between Farina and Brown Transport. On this issue the letter stated only that: "We are still attempting to determine whether Brown Transport has anything to do with this." Appendix at 162. On January 22, 1982, during a phone conversation, counsel for Brown Transport advised Mr. O'Neill of the additional information. Appendix at 87.

On March 24, 1982, Brown Transport's counsel reported to Mr. O'Neill that Farina had executed two trip leases with Brown Transport in late 1978 and early 1979. He reported that Farina had been paid for a trip to New York from Jacksonville, Florida extending from November 13, 1978 to November 15, 1978. He reported that their business together ended three days before the accident and that the next trip for Brown Transport did not begin until January 3, 1979.

On April 16, 1982, Mr. O'Neill communicated with Knight directly in order to arrange for his appearance as a witness at the trial of Miller's action, and Knight learned for the first time of the information concerning a possible relationship between Farina and Brown Transport.

Knight asked Mr. O'Neill to represent him, but O'Neill refused because to do so might weaken Knight's credibility as a witness in Miller's case.

The Miller action was tried before a jury. Although Farina had not been operating his truck on Brown Transport's business when the accident occurred (his trip under the Brown Transport lease had been concluded three days before the accident), the jury was permitted to find Brown Transport liable because the lease between it and Farina did not contain a clause eliminating the thirty-day minimum requirement for this type of lease arrangement. Appendix at 235. The jury returned a verdict in favor of Miller.

Subsequently, Knight again asked Mr. O'Neill to represent him, and Mr. O'Neill agreed to do so. Mr. O'Neill, as Knight's counsel, then commenced this action on November 15, 1982. On March 23, 1983, Brown Transport filed the subject motion for summary judgment, alleging that the applicable statute of limitations had expired. In his answer to this motion, Knight alleged, *inter alia*, that Brown Transport was estopped from asserting the statute of limitations or, alternatively, that the "discovery rule" prevented the accrual of the cause of action.

On June 6, 1983, the Honorable Harold A. Ackerman denied Brown Transport's motion for summary judgment. He concluded that the "discovery rule" was inapplicable, and Knight has not challenged this holding on appeal. Judge Ackerman also held, however, that Brown Transport was estopped from asserting the two year statute of limitations because it withheld information that it knew, or should have known, about the relationship between itself and Farina. Judge Ackerman concluded that Brown Transport was guilty of either intentional or unintentional misrepresentation.

The case was then transferred to the Honorable Maryanne Trump Barry. Because liability had been fully litigated in Miller's case, Judge Barry granted Knight's motion for summary judgment on

the issue of liability. Although Judge Barry disagreed with Judge Ackerman's equitable estoppel conclusion, she considered herself bound to apply it as the law of the case.

The case was then tried before Judge Cowen on the issue of damages. Knight introduced three expert witnesses in order to prove the extent of his injuries and the resulting damages. Knight was awarded $15,000 in damages. Judge Cowen, in the exercise of his discretion, disallowed a large portion of the requested expert witness fees as costs.

Brown Transport is before this court raising only the statute of limitations issue. Knight has cross-appealed from Judge Cowen's adverse ruling disallowing his requested expert witness fees.

## II.

■ Before considering the merits of these issues, we address *sua sponte* our appellate jurisdiction. Although not briefed by either party, this court is always under an obligation to satisfy itself that appellate jurisdiction exists. *Lake Country Estates v. Tahoe Regional Planning Agency*, 440 U.S. 391, 398, 99 S.Ct. 1171, 1175, 59 L.Ed.2d 401 (1979).

On January 13, 1986, Judge Cowen entered the order granting judgment in favor of Knight and against Brown Transport for the sum of $15,000. On February 25, 1986 Judge Cowen amended his earlier order to provide for prejudgment interest and some of the requested costs. On March 13, 1986, Knight filed a timely notice of appeal from the amended order of February 25, 1986, and on March 26, 1986, Brown Transport filed a timely cross-appeal from the same order.

Thereafter, it appeared that the district court had not disposed of all of the issues before it. By a consent order entered on June 12, 1986, Judge Cowen again amended the judgment by dismissing a second cause of action for consortium that had been asserted by Audrey Knight, the wife of the

plaintiff. Thus, because only the order of June 12th disposed of all issues and all parties, and no notice of appeal was filed after the June 12th order was entered, we must consider whether the notices of appeal filed March 13th and March 26th, effectively vested jurisdiction in this court.

Fed.R.App.P. 4(a)(4) enumerates certain instances in which a premature notice of appeal will "self destruct" and thereby fail to vest jurisdiction in the appellate courts. Fed.R.App.P. 4(a)(4) provides in relevant part:

> If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect.

Therefore, if a notice of appeal is filed before disposition of the various motions listed, the notice of appeal is a nullity. We have held that this "self-destruct" provision is confined to only the specific instances cited in Fed.R.App.P. 4(a)(4). *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 185 (3d Cir.1983).

Here the various internal rules to which Fed.R.App.P. 4(a)(4) refers, are not implicated. No motions involving those rules were made in this proceeding. Thus, the self-destruct provision of Fed.R.App.P. 4(a)(4) is inapplicable. See also *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982).

■ We look instead to the premature notice of appeal rule embodied in Fed.R. App.P. 4(a)(2)[1] and our decisions in *Cape*

---

1. Fed.R.App.P. 4(a)(2) provides: "Except as pro-  vided in (a)(4) of this Rule 4, a notice of appeal

*May Greene* and *Richerson v. Jones,* 551 F.2d 918 (3d Cir.1977). Where Fed.R. App.P. 4(a)(4) has no application and a premature notice of appeal has been filed, the notice of appeal takes effect at the time the order becomes final, in the absence of a showing of prejudice to the other parties. Rule 4(a)(2) gives effect to the notice of appeal after the non-final order has become final.

◼ In the present case, the original order of January 13, 1986 (the $15,000 verdict) and the February 25th order (awarding pre-judgment interest and certain costs) were not appealable orders because there remained open a cause of action stated by Audrey Knight, the plaintiff's wife. That cause of action was not dismissed until June 12th. Upon dismissal, because no party has claimed prejudice from the premature appeal, the earlier filed notices of appeal (March 13th and March 26th), which were filed from non-final orders, became operative as to the now final order of June 12th, thereby vesting this court with jurisdiction.

### III.

◼ New Jersey [2] recognizes certain circumstances in which the statute of limitations will be tolled for equitable reasons. Those circumstances have been narrowly limited by court decisions.

> In the main, these cases have involved situations in which: (1) a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation; or (2) a defendant has failed to disclose information which he had a statutory duty to disclose, and such non-disclosure prevented a plaintiff from realizing that he possessed an actionable claim.

*Lawrence v. Bauer Publishing and Printing Ltd.,* 78 N.J. 371, 396 A.2d 569, 572 (1979) (Pashman, J. concurring) (citations

filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

omitted); *see also Tevis v. Tevis,* 79 N.J. 422, 400 A.2d 1189, 1196 (1979) ("Even though defendant's conduct was grotesque and inexcusable, there is no claim that he defrauded plaintiff or that she relied upon any misleading or deceitful misrepresentations of his in forestalling civil redress.").

We find that the instant case does not fall within either of these two general rules. Here there is no allegation that Brown Transport ever attempted to convince Knight that there would be a settlement of his claims without the need for Knight to resort to litigation. Nor has Brown Transport failed to disclose information which it had a statutory duty to reveal. Although Knight bases his claim on Brown Transport's non-disclosure of Farina's identity and his relationship to their company, there was no violation of a statutory duty to disclose.

Knight does not dispute the fact that the answers provided by Brown Transport were all technically correct—Knight's information request contained several different name variants, none of which was correct. And even if the correct name had been supplied to Brown Transport, there is nothing in the record demonstrating that its corporate records suggested that Farina was their agent on the night of the accident, since Farina's job had been completed three days earlier. Because Brown Transport had provided truthful responses to all questions asked, and it was under no affirmative obligation to provide information that was not requested, it did not violate any statutory duty to disclose.

Judge Ackerman's analysis relied primarily on two New Jersey Supreme Court decisions: *Galligan v. Westfield Centre Service, Inc.,* 82 N.J. 188, 412 A.2d 122 (1980), and *Lawrence v. Bauer Publishing and Printing Ltd.,* 78 N.J. 371, 396 A.2d 569 (1979). However, in applying the principles announced in *Lawrence,* we conclude that *Lawrence* cannot support a ruling in

**2.** Both parties accept Judge Ackerman's conclusion that New Jersey law governs this dispute.

Knight's favor. Nor, on the facts of this case, is *Galligan* helpful to Knight.

*Galligan v. Westfield Centre Services, Inc.* involved wrongful death and survival claims filed on behalf of the estate of Mary F. Galligan. The plaintiff originally filed suit, three days before the statute of limitations was to expire, in the United States District Court for the District of New Jersey. The defendants filed a motion to dismiss because of lack of diversity. While the motion to dismiss was pending in federal court, the administrator of the Estate of Galligan filed a substantively identical complaint in the New Jersey Superior Court, Law Division. This state action was filed twenty-two days beyond the applicable two-year statute of limitations period.

After the federal district court granted the defendant's motion to dismiss on diversity grounds, the New Jersey state trial court granted defendant's motion to dismiss on statute of limitations grounds. Justice Pashman, writing for the New Jersey Supreme Court, reversed because he concluded that the legislative objectives behind the statute of limitations were not fairly implicated in a case where the timely filing of a complaint in the federal court provided the defendants with notice that they were subject to a lawsuit. Justice Pashman relied upon the policy reasons giving rise to the enactment of a statute of limitations. He stressed that "[t]he most important of these purposes recognizes that eventual repose creates desirable security and stability in human affairs." Thus statutes of limitations compel the exercise of a right of action within a specific reasonable period of time." 412 A.2d at 124.[3]

*Galligan*, therefore stands for the proposition that, where a timely action is dismissed by the federal court for lack of jurisdiction, the same action filed prior to the federal court dismissal, but brought out of time in state court, will not be dismissed when dismissal would not further the legis-

lature's purpose of insuring repose. In *Galligan*, because the federal suit was timely filed, the defendants' sense of security in feeling free from potential liability could not have arisen before that suit was dismissed. Since the state action was filed *prior* to the dismissal of the federal suit, the defendants in *Galligan* obviously could not have felt secure in their position. Thus, they could not have experienced the repose which was critical to the *Galligan* opinion.

The instant case, however, is clearly distinguishable from *Galligan*. In determining that the legislative interests underlying the limitations period were not jeopardized, the decision in *Galligan* relied not only on the fact that the defendants there did not experience repose, but also hinged on the fact that the plaintiff there had attempted to act diligently:

> "the filing of a lawsuit itself shows the proper diligence on the part of the plaintiff which statutes of limitations were intended to insure." Since the plaintiff exhibited this very diligence before the expiration of two years from the date of the accident, he cannot be said to have "slept on his rights."

*Id.* 412 A.2d at 125 (quoting *Kaczmarek v. New Jersey Turnpike Authority*, 77 N.J. 329, 390 A.2d 597, 603 (1978)) (citations omitted).

This differs markedly from Knight's circumstance, where Knight's attorney was aware of the fact that Brown Transport's name appeared on the vehicle involved in the accident, yet he failed to file any action until four years after the accident (two years beyond the statutory limit). In contrast to Knight's colleague, Miller, who diligently filed a claim before the expiration of the two-year statutory period, Knight slept on his rights and therefore cannot be deemed to have acted with the diligence that *Galligan* requires. The important legislative interest in giving defendants rea-

---

**3.** The court in *Galligan v. Westfield Centre Service, Inc.*, 82 N.J. 188, 412 A.2d 122, 124 (1980), also found that statutes of limitations have the effect of sparing the courts from litigation of stale claims and of inducing litigants to pursue their claims diligently so that the opposing parties will have a fair opportunity to defend.

sonable repose is strongly implicated in the present case, while it was not in *Galligan.*

Similarly, *Lawrence v. Bauer Publishing & Printing Ltd.*, 78 N.J. 371, 396 A.2d 569 (1979), does not provide support for applying the doctrine of equitable estoppel in the instant case. *Lawrence* involved an allegedly libelous newspaper article that was published on January 9, 1975. N.J. Stat.Ann. § 2A:14–3 states that all libel actions must be brought within one year of the date of publication. Four months after publication, the *Lawrence* plaintiffs filed an action against the newspaper, its president, its editor, a reporter and one "John Doe," described as the unknown employee who wrote the January 9th newspaper article. Thereafter, Lawrence also attempted to learn the name of the writer's unnamed source. Although Lawrence's interrogatories sought to have the defendant newspaper identify the source, the newspaper declined to reveal his name. Before the one-year statutory period had expired, Lawrence filed a motion to compel, and that motion was granted on January 16, 1976. Shortly thereafter, the defendant newspaper identified Joseph Hartnett as the source of the story, and Lawrence attempted to amend his complaint to add Hartnett as a defendant.

The trial court held that the one-year statute of limitations barred the amendment of the complaint with the name of a new defendant. *Lawrence v. Bauer Publishing & Printing Ltd.*, 143 N.J.Super. 387, 363 A.2d 357 (Ct.Law Div.1976). A divided appellate court reversed, holding that the doctrine of equitable estoppel prevented Hartnett from pleading a statute of limitations defense in a situation where he specifically asked that the newspaper not reveal his name, and the newspaper com-

plied. *Lawrence v. Bauer Publishing & Printing Ltd.*, 154 N.J.Super. 271, 381 A.2d 358 (App.Div.1977).

In a one sentence, *per curiam* opinion, the New Jersey Supreme Court reversed: "The judgment of the Appellate Division is reversed and that of the trial court reinstated substantially for the reasons expressed in the opinion of the dissenting judge in the Appellate Division, reported at 154 N.J.Super. 271, 276, 381 A.2d 358." *Lawrence v. Bauer Publishing & Printing Ltd.*, 78 N.J. 371, 396 A.2d 569, 570 (1979). We therefore look to Appellate Division Judge Ard's dissenting opinion, for instructions as to New Jersey's equitable estoppel doctrine.

Judge Ard, in denying the applicability of the equitable estoppel doctrine to the circumstances in *Lawrence,* declared that equitable estoppel may be invoked only in response to a defendant's failure to act in accordance with a legal duty. He argued that Hartnett had a legitimate desire to maintain his status as an anonymous source, and that the record did not reveal that Hartnett had attempted to conceal his identity, beyond the mere request for anonymity. The thrust of Judge Ard's opinion was that Hartnett was under no legal duty to come forward and identify himself.

Moreover, as Judge Ard's opinion in *Lawrence* points out, the plaintiffs there could have used the fictitious name device in their original complaint and designated a "John Doe" as the source of the story, in the same manner that they designated the writer of the story. Because New Jersey Rule of Court 4:26–4 [4] provided the plaintiffs with the opportunity to include Hartnett in the suit during the one-year statutory period, Judge Ard found no reason to

---

**4.** Fictitious Names; In Personam Actions

In any action, irrespective of the amount in controversy, other than an action governed by R. 4:4–5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint

to state defendant's true name, such motion to be accompanied by his affidavit stating the manner in which he obtained that information. If, however, defendant acknowledges his true name by written appearance or orally in open court, the complaint may be amended without notice and affidavit. No final judgment shall be entered against a person designated by a fictitious name.

apply the equitable estoppel doctrine. 381 A.2d at 364. *See also Viviano v. CBS, Inc.,* 101 N.J. 538, 503 A.2d 296, 304–06 (1986) (emphasizing importance of using fictitious name device to maintain cause of action).

Thus, *Lawrence* does not provide authority for the application of equitable estoppel in the present case. To the contrary, by accepting *Lawrence's* teaching, as we must in resolving cases that arise in a diversity context, we are instructed that, without a legal duty to disclose, and with a failure by the plaintiff to utilize the fictitious name device provided by Rules of Court,[5] equitable estoppel will not be applied to forestall a statute of limitations bar. In the present case, we know of no such legal duty to which Brown Transport was subject, nor of any efforts made by Knight to avoid the two-year limitation by utilizing a fictitious name device.

Moreover, regardless of whether a "John Doe" action was filed against the driver of the tractor-trailer involved in the accident on November 18, 1978, original counsel for Knight had the full statutory two-year period in which to file a claim against Brown Transport. It was never in dispute that Brown Transport's name was on the tractor-trailer that collided with the army transport vehicle that carried Knight and Miller. It was on the basis of identical information that Mr. O'Neill had filed a timely cause of action against Brown Transport on behalf of Miller.

■ As *Galligan* and *Lawrence* illustrate, equitable estoppel to plead a statute of limitations defense must be an exception rather than the rule. It will not be invoked against a defendant when the plaintiff has been less than diligent in pursuing and pressing his claims. Nor will it be invoked where there was no representation of settlement which produced a false sense of security or where there was no statutory duty to disclose. Nor will it be applied where no fraudulent or deceitful misrepre-

sentations precluded suit, or where the legislative purpose of the statute of limitations is not furthered.

Inasmuch as none of these considerations impact upon Knight's failure to bring an action against Brown Transport, Brown Transport may not be estopped from asserting the bar of the statute.

## IV.

Because we conclude that, as a matter of law, the statute of limitations barred Winfield Knight's claim against Brown Transport Corporation, we hold that Brown Transport was entitled to summary judgment. Therefore as to Brown Transport's appeal at 86–5214, we will reverse the district court's order entered January 13, 1986, awarding judgment in favor of Knight, and direct that the district court enter judgment in favor of Brown Transport.

This being so, Knight's cross-appeal at 86–5178, seeking expert witness fees, must fail, as Knight is no longer entitled to any costs of his action. As to Knight's appeal at 86–5178, we will vacate the district court's order entered February 25, 1986 and direct that the district court enter an appropriate order as to costs, taking into account the judgment which it has now been directed to enter in favor of Brown Transport.

Each party will bear its own costs on this appeal.

---

5. With regard to "John Doe" complaints in diversity cases in federal court, see generally, 2A J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE ¶ 8.10, at 8–45 to 8–46.