**Robert PALESTRI, Appellant,**

v.

**MONOGRAM MODELS, INC., Kidde Recreation Products, Inc., The Ertl Company and John Does 1 Through 20.**

**No. 88–5542.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 9, 1988.

Decided May 19, 1989.

Stephen N. Dratch, of counsel; Thomas Hendrickson, on the brief, Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau & Falkin, P.A., Roseland, N.J., for appellant.

Steven M. Schneebaum and Patton, Boggs & Blow, Washington, D.C., for appellees, Monogram Models, Inc. and Ertl Co.

Before SLOVITER and BECKER, Circuit Judges, and FULLAM, District Judge *.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

I.

The sole issue presented on this appeal is whether the New Jersey statute of limitations for libel begins to run when an allegedly libelous press release is mailed or when it is received and read. The facts relevant to this appeal are not in dispute.

Appellant Robert Palestri and Sol Kramer were formerly principals in a toy and hobby products distributorship, Kramer Brothers, Inc., which filed for bankruptcy in 1982. Appellees Monogram Models, Inc. and The Ertl Company, a subsidiary of Kidde Recreation Products, Inc., and other creditors, believing that Palestri and Kramer had deliberately misrepresented the financial health of the company when ordering goods on credit in 1981, filed suits in

1984, alleging fraud, negligence, and racketeering. After two years of litigation the suits were settled in April 1986 and thereafter dismissed. By agreement of the parties the terms of the settlement were to remain confidential.

On August 20, 1986, Monogram and Ertl mailed a joint press release from Illinois to the New York office of Toy and Hobby World Weekly Market Report which announced the settlement of the fraud and racketeering suit against Palestri and Kramer. The press release contained an admonition that because of its sensitive and complex nature it should be published in its entirety, but it was ultimately excerpted in the September 15, 1986 issue of Toy and Hobby World Weekly Market Report and later in Toy and Hobby World's October monthly magazine. The press release stated that the suit alleged that Palestri and Kramer had defrauded Monogram and Ertl through "overt misrepresentations and by ordering goods on credit without the intention of paying for them," and further stated that Monogram and Ertl filed their action "because they are no longer willing to be victimized by manipulation of their customers' businesses." App. at 59. These statements were repeated in the magazines substantially verbatim.

Palestri filed suit against Monogram and Ertl on August 21, 1987 in the New Jersey Superior Court and defendants removed it to the District Court for the District of New Jersey on the basis of the diverse citizenship of the parties.[1] The suit originally alleged counts for libel, slander, breach of contract, and intentional infliction of emotional distress. Defendants answered asserting various affirmative defenses including, *inter alia*, the defense that the libel and slander counts were barred by the statute of limitations. Defendants then moved for summary judgment.

The parties and the district court assumed that New Jersey law applies to this issue, and we see no reason to challenge

---

* Hon. John P. Fullam, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. Kramer also filed a similar action, which was consolidated with that of Palestri. Kramer's appeal has been withdrawn.

that assumption. The district court construed the libel and slander counts as asserting the tort of defamation, rather than trade libel which apparently is subject to a different statute of limitations. After a careful canvass of the available New Jersey precedents the court predicted that New Jersey would hold that the libel and slander claims were barred by New Jersey's one-year statute of limitations because the complaint was filed one year and one day after the allegedly libelous communication was mailed by the defendants. The court held that the claim for intentional infliction of emotional distress could not be maintained because the conduct at issue did not rise to the requisite outrageousness. Finally, the court held that the settlement contract could not be construed to bar the issuance of the press release and thus, that claim also must fail. Therefore, the court granted summary judgment for defendants over the entire action, 700 F.Supp. 1348. Our review of the district court's grant of summary judgment is plenary.

## II.

Palestri appeals only from that part of the order that dismissed the libel claim on statute of limitations grounds. The text of the relevant New Jersey statute provides that "[e]very action for libel or slander shall be commenced within 1 year next after the publication of the alleged libel or slander." N.J.Stat.Ann. § 2A:14–3 (West 1987). Palestri argues that the district court erred in concluding that the act of publication, which starts the limitations period running, occurred when the press release was mailed. Rather, Palestri argues, publication did not occur until the press release was received and read by someone at Toy and Hobby World. Thus, Palestri argues, since a letter posted in Illinois on August 20 would not in all likelihood have reached New York until at least August 22, his suit was timely filed.

The issue before us is a narrow one. Although Palestri argues that the statute of limitations did not begin to run until there was communication of the libel to a third party, it is not clear whether New Jersey would hold off the running of the statute until a third party actually read the material. At least with respect to a mass media publisher defendant, New Jersey has adopted a version of the single publication rule which establishes publication for purposes of commencing the statute of limitations at the time the libelous material is released to the trade, even though there may be no proof that at that time a third person has read and understood the libel. *Barres v. Holt, Rinehart and Winston, Inc.*, 131 N.J.Super. 371, 390, 330 A.2d 38, 50 (Law Div.1974), *aff'd per curiam*, 141 N.J.Super. 563, 359 A.2d 501 (App.Div. 1976), *aff'd per curiam*, 74 N.J. 461, 378 A.2d 1148 (1977). *Barres* suggests that New Jersey would, at least for media publishers, apply a time of sending rule.

However, the rule of *Barres* and its progeny does not necessarily govern the case of a single mailing by a private party of the allegedly libelous material. *Barres* represents New Jersey's application of the single publication rule for media publishers, a rule which is designed to avoid a multiplicity of lawsuits. It stems from the implicit common sense presumption that material widely distributed by the media is ordinarily equivalent to communication for statute of limitations purposes. *See Barres*, 131 N.J.Super. at 390, 330 A.2d at 49–50; *cf. Hartmann v. Time, Inc.*, 166 F.2d 127, 135 (3d Cir.1947) *cert. denied*, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948) (making same presumption for Pennsylvania law and noting the likelihood that "Life" magazine was read by persons not privileged within two or three days of its "very widespread distribution").

It does not follow ineluctably that New Jersey would apply the same rule it has established for media publications, which rejects the need to show the material has been read and understood before publication is deemed to have occurred, to cases involving a private written communication. That is because there is simply no basis either in New Jersey precedent or experience to assume that the contents of a letter have been communicated until the letter has been received by the addressee. *See*

*Brown v. Chicago, R.I. & P.R.R.*, 212 F.Supp. 832, 834 (W.D.Mo.1963) (distinguishing between media communications and a private letter).

■ No New Jersey case addresses whether, for statute of limitations purposes, publication of a libel sent through the mail occurs at the time of posting or the time of receipt by a third party.[2] The few cases from other jurisdictions which have considered that issue have divided on the result.

In *Van Duzer v. Bourisseau*, 23 Mich. App. 720, 179 N.W.2d 214, 215 (1970), plaintiff alleged he was libeled by a letter dated June 21, 1966 which was mailed that day. The court held that publication occurred "when the letter was delivered." Although the specific date of delivery was not shown, the court reasoned that that date was sometime after June 21, 1966. It followed that the requirement of the Michigan statute of limitations that a copy of the summons and complaint be placed in the hands of an officer for immediate service within a year was satisfied by the placement of the papers in the hands of the county sheriff on June 21, 1967 for immediate service on defendant. *See also Brown v. Chicago, R.I. & P.R.R.*, 212 F.Supp. 832, 836 (W.D. Mo.), *aff'd per curiam*, 323 F.2d 420 (8th Cir.1963) (publication of a libel occurs no earlier than date of receipt).

Defendants rely on *Sullivan v. Crisona*, 54 Misc.2d 478, 283 N.Y.S.2d 62, 65 (N.Y. Sup.Ct.1967), where the court held that because the critical date was November 30, 1965 when the mailing was made, a complaint filed December 2, 1966 was too late. *See also Spears Free Clinic & Hosp. for Poor Children v. Maier*, 128 Colo. 263, 261 P.2d 489, 491 (1953) (in banc) (publication of libelous letter occurs at posting). However, we believe that the *Sullivan* court's conclusion that the mailing of the allegedly libelous matter marked the commencement of the limitations period is inconsistent with

its rationale. In the opinion the court stated, "[a]nalogous to news media, the time of a publication is the time when the written matter reaches the newsstand or *is otherwise available for reading*." *Sullivan*, 283 N.Y.S.2d at 65 (emphasis added). Since the material is not "available for reading" until it has been received, the analysis of the court would seem more consistent with a rule using the receipt date. *See Lathrop v. McBride*, 209 Neb. 351, 307 N.W.2d 804, 806 (1981) (slander published when understood by third party).

Our task is to predict how New Jersey would analyze this issue. In New Jersey, " '[p]ublication,' " as used in the law of defamation, " 'is a word of art and refers to the distribution of written material or the transmittal of the spoken word to a third person.' " *Lawrence v. Bauer Publishing and Printing Ltd.*, 154 N.J.Super. 271, 277, 381 A.2d 358, 362 (App.Div.1977) (Ard, J.A.D., dissenting) (quoting *Barres v. Holt, Rinehart and Winston, Inc.*, 74 N.J. 461, 463, 378 A.2d 1148, 1149 (1977) (Schreiber, J., dissenting)), *rev'd per curiam on dissent below*, 78 N.J. 371, 396 A.2d 569 (1979).

Defendants argue that because Justice Schreiber's dissent in *Barres* tying publication to "distribution of written material," was later adopted in Judge Ard's dissent in *Lawrence*, which in turn was substantially adopted by the New Jersey Supreme Court on appeal, we must affirm the district court's application of the statute of limitations as a bar. However, that approach puts the rabbit in the hat, because "distribution" of written material does not necessarily connote mailing as distinguished from receipt.

The district court itself defined "publication" as the "communication of the allegedly libelous statement to a third person *with a reasonable ground to suppose that it will become known to others*. *See Gna-*

2. We note that nothing in this opinion relaxes the requirement that a plaintiff must prove that an allegedly defamatory statement has been communicated to and understood by a third person. New Jersey recognizes that this requirement is not always satisfied by publication alone. *See Gnapinsky v. Goldyn*, 23 N.J. 243, 253, 128 A.2d 697, 702 (1957) (Where allegedly slanderous statement did not clearly refer to plaintiff, "more than mere publication must be proved to warrant the inference that the listener in fact understood plaintiff was meant.").

*pinsky v. Goldyn*, 23 N.J. 243, 128 A.2d 697 (1957); *Kelly v. Hoffman*, 137 N.J.L. 695, 61 A.2d 143 (E. and App.1948)." App. at 72 (emphasis added). The district court believed that "in the case at bar, that event occurred when Monogram and Ertl *issued* the August 20, 1986 release." *Id.* (emphasis added). The district court apparently viewed the issuance of the press release here as a general dissemination. However, all the defendants' version of the indisputed facts includes on this issue is that "[t]he press release was mailed" to the magazine on August 20, 1986 with a cover letter, App. at 51, and there are no facts suggesting any widespread release on August 20, 1986.

Because mailing a press release to a magazine is a far different form of dissemination than is the "distribution" of material, which is the step that the New Jersey cases treat as the publication, we see nothing in New Jersey law that compels us to adopt the strict door-closing approach pressed by defendants and adopted by the district court. Indeed, New Jersey has cautioned that even the single publication rule "should not be applied mechanically to produce results at variance with broader purposes of the law, such as here, protection of reputation." *Barres*, 131 N.J. at 391, 330 A.2d at 50.

We recognize that New Jersey believes it significant that the statute of limitations for libel be construed with precision so that there is certainty as to the point at which the limitations period begins to run. *Lawrence*, 381 A.2d at 362–63 (Ard, J.A.D., dissenting); *see also Lawrence*, 396 A.2d at 571 (Pashman, J., concurring). Indeed, New Jersey eschews the discovery rule in libel cases and holds that the statute of limitations for libel, unlike that for personal injuries, is measured from the time of publication rather than the time a cause of action accrues. *Lawrence*, 396 A.2d at 571 (Pashman, J., concurring). However, a rule which dates the publication of a letter sent through the mail from the time the letter is received is not necessarily incompatible with New Jersey's desire for certainty. In the absence of evidence of actual receipt, receipt can be presumed as the time it is reasonably likely that the libelous material will come to the attention of a third party. *But see Brown v. Chicago, R.I. & P.R.R.*, 212 F.Supp. at 836 (giving plaintiff leave to prove that no one read the letter at issue on the date it was received).

The advantage of using receipt as the touchstone is that it gives libel plaintiffs the full year provided by the legislature for the start of the lawsuit from the time the libel has been communicated. A rule that measures the year from the time the letter is sent could eviscerate the cause of action itself. While it is unlikely a letter would be mislaid by the postal authorities for a full year, we know such things happen. In any event, even if the letter were merely delivered months late in the one-year period, it would be subject to an already ticking clock. Using receipt as the starting point thus avoids the anomalous result that the statute of limitations could have run before there is any actual communication of the libelous material. *See Zuck v. Interstate Publishing Corp.*, 317 F.2d 727, 731 (2d Cir.1963) ("To fix the accrual date *prior* to receipt by the public of the libelous material, however, is normally to begin the running of the statute of limitations before the time that the offending publication has been brought to the victim's attention, and, indeed, prior to the occurrence of any harm to his reputation.").

■ We see no reason why New Jersey would not adopt a rule that publication in the case of a single mailing takes place no earlier than receipt, which would accommodate the need for certainty and still give plaintiffs the full statutory year. In this case, there is no stipulation when the letter mailed on August 20, 1986 from Illinois was received in New York. Common experience tells us it may not have been received before August 22. If defendants contest that, it will be a factual issue. In any event, we cannot hold as a matter of law that Palestri's action for libel filed August 21, 1987 was not timely commenced.

### III.

For the reasons set forth above, we will reverse the district court's grant of sum-

mary judgment on the libel claim and will remand for further proceedings. Of course, we intimate no view on the merits of the case or on any of the other defenses that have been asserted.