ALONZO W. LAWRENCE AND JAMES SIMPSON, PLAIN-
TIFFS-RESPONDENTS, v. BAUER PUBLISHING &
PRINTING LTD., A CORPORATION, KURT CHRISTO-
PHER BAUER, JEFFREY LANCE BAUER AND PATSY
BONTEMPO, DEFENDANTS, AND JOSEPH HARTNETT,
DEFENDANT-APPELLANT.

Argued October 30, 1978—Decided January 10, 1979.

*Mr. Alan J. Karcher* argued the cause for appellant.

*Mr. James B. Flynn* argued the cause for respondents
(*Messrs. Williams* and *Flynn,* attorneys; *Mr. Harry Green,*
of counsel).

PER CURIAM. The judgment of the Appellate Division is
reversed and that of the trial court reinstated substantially

for the reasons expressed in the opinion of the dissenting judge in the Appellate Division, reported at 154 *N. J. Super.* 271, 276.

PASHMAN, J., concurring. I concur in the result reached by the majority. The allegedly libelous article which forms the basis of plaintiffs' suit was printed in the January 9, 1975 edition of defendant newspaper. Defendant Hartnett was not joined as a party to the action until May 11, 1976. Since a one-year statute of limitations is applicable to "[e]very action at law for libel," *N. J. S. A.* 2A:14–3, plaintiffs' claims for damages against Hartnett are time-barred.

Plaintiffs contend, however, that the "discovery rule" and the doctrine of "equitable estoppel" should lead this Court to hold that Hartnett was timely joined as a defendant to the action. A review of the facts upon which plaintiffs premise these claims and relevant case law shows clearly that plaintiffs' contentions in this regard are lacking in merit.

I

Plaintiffs are former officers of the Rahway Taxpayers Association. In an attempt to prevent the construction of a new municipal firehouse, they filed with the city clerk petitions purportedly signed by Rahway citizens which demanded that the question be placed on referendum. On January 9, 1975, defendant-newspaper ran a story which indicated that city officials were investigating the authenticity of some of those signatures. Plaintiffs demanded a retraction, in response to which the newspaper printed an article in the April 17, 1975 edition stating that the earlier story had been the product of information received from "a source in the [city] administration."

On May 8, 1975 plaintiffs commenced a libel action against the newspaper, its president, its editor, and a reporter. Also joined as a defendant was "John Doe," described in the

complaint as the fictitious name of a newspaper employee who was the "composer and writer" of the allegedly libelous story.

Through depositions and interrogatories plaintiffs attempted to discover the source behind the January 9 story. When defendants refused to reveal the name, plaintiffs moved for an order compelling disclosure. That motion was granted.[1] On February 10, 1976, defendants identified the source as City Administrator Joseph Hartnett.

Plaintiffs proceeded to depose Mr. Hartnett on March 3 and 18, 1976. During the course of that deposition, Hartnett stated that he had requested the newspaper to keep his name confidential when he supplied the information which formed the basis of the January 9 article. Having acquired this data, on May 11, 1976 — more than 16 months after the allegedly libelous story was printed — plaintiffs amended their original complaint to add Hartnett as a defendant.

## II

*N. J. S. A.* 2A:14–3 provides that every action at law for libel must be commenced within "1 year next after the publication of the alleged libel * * *." The article here at issue was first printed and released for general circulation on January 9, 1975. It was therefore on that date that the story was "published" for purposes of the statute of limitations. See *Barres v. Holt, Rinehart & Winston, Inc.,* 74 *N. J.* 461 (1977), aff'ing o.b. 141 *N. J. Super.* 563 (App. Div. 1976), aff'ing o.b. 131 *N. J. Super.* 371 (Law Div. 1974). Since Hartnett was not joined as a defendant until May 11, 1976, plaintiffs' action against Hartnett is *prima facie* time-barred. Plaintiffs contend, however, that under

---

[1]The validity of this order is not now before this Court. In light of the New Jersey News Media Privilege Act, *N. J. S. A.* 2A:84A–21, grave doubts exist as to the propriety of the trial court's action in granting this motion.

the discovery rule the one-year limitations period of *N. J. S. A.* 2A:14–3 did not begin to run until February 10, 1976 — the date upon which Hartnett's name was disclosed.

The so-called "discovery rule" is a doctrine that has been developed by this court, and courts in other jurisdictions, to deal with the sometimes harsh results that would ensue were causes of action deemed to accrue at the moment an alleged wrongful act is committed. Simply stated, the rule provides that:

\* \*" \* in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.

[*Lopez v. Swyer*, 62 *N. J.* 267, 272 (1973)]

That is, a cause of action does not accrue until "plaintiff learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action." *Burd v. New Jersey Telephone Co.*, 76 *N. J.* 284, 291 (1978) (emphasis in original).

Plaintiffs' reliance upon this doctrine in the present litigation setting is wholly misplaced. The discovery rule derives from this Court's interpretation of the language of *N. J. S. A.* 2A:14–2 — the statute of limitations applicable to personal injury suits. That statute provides that an action for damages must be commenced within two years after "the cause of . . . action shall have accrued." Due to the absence of any legislative specification as to the precise time when a claim "accrues," our courts, in the exercise of their judicial function, have developed a rule which best serves the interests of justice. *See, e. g., Farrell v. Votator Div. of Chemetron Corp.*, 62 *N. J.* 111, 121 (1973); *Fernandi v. Strully*, 35 *N. J.* 434, 449 (1961).

The statute of limitations applicable to the present suit, however, does not measure the limitations period in terms of the "accrual" of a cause of action. Instead, it provides that

an action must be brought within one year of "the publication" of the alleged libel. The Legislature has therefore fixed a precise date on which the limitations period begins to run. Once the date of publication is determined, there is no need for further judicial interpretation. Hence, the discovery rule is inapplicable to libel actions. *See Rosenberg v. Town of North Bergen,* 61 *N. J.* 190 (1972) (discovery rule inapplicable where statute of limitations provides that an action must be commenced within ten years "after the performance or furnishing of . . . services and construction.").

Even were the discovery rule here applicable, plaintiffs' position would still lack merit. Case law demonstrates that this rule has been successfully invoked only in situations in which: (1) a plaintiff was unaware that he had suffered injury at the time the defendant committed a wrongful act; (2) a plaintiff was unaware of the causal connection between his injury and the defendant's wrongful conduct; or (3) a plaintiff was unaware that wrongful conduct had occurred. See, *e. g., Moran v. Napolitano,* 71 *N. J.* 133 (1976); *Fox v. Passaic General Hospital,* 71 *N. J.* 122 (1976); *Lopez v. Swyer,* 62 *N. J.* 267 (1973); *Fernandi v. Strully,* 35 *N. J.* 434 (1961). The rule has never been applied in situations such as the present where plaintiffs know that they possess actionable claims but are ignorant of the precise identity of the person responsible for their injuries. *Cf. McGlone v. Corbi,* 59 *N. J.* 86 (1971).

One reason for this non-applicability is that such a plaintiff can prevent the limitations period from running by complying with *R.* 4:26–4. That rule provides in part:

In any action other than an action governed by *R.* 4:4–5 (affecting specific property or a res), if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. * * *

The very purpose of this rule is to suspend the running of the statute of limitations until the actual identity of a de-

fendant is discovered. *See, e. g., Farrell v. Votator Div. of Chemetron Corp.*, 62 *N. J.* 111 (1973).

The present plaintiffs were clearly aware of *R.* 4:26–4 inasmuch as they did file a "John Doe" complaint against the "composer and writer" of the allegedly libelous article on May 8, 1975. By failing to do likewise with respect to the article's "source", they inexcuseably slept on their rights and therefore cannot now be heard to complain that their suit against Hartnett is time-barred.

## III

Plaintiffs also contend that the doctrine of "equitable estoppel" prevents Hartnett from pleading the statute of limitations as a defense to this action. They maintain that his request to the newspaper that his name remain confidential amounted to "inequitable" conduct which prevented plaintiffs from joining him as a defendant prior to January 9, 1976.

A number of courts of this State have held that a defendant can be estopped from invoking the statute of limitations if he has engaged in wrongful conduct which has caused a plaintiff's claim to be subject to the statute's bar. In the main, these cases have involved situations in which: (1) a defendant has lulled a plaintiff into a false sense of security by representing that a claim will be amicably settled without the necessity for litigation, *see, e. g., Friedman v. Friendly Ice Cream Co.*, 133 *N. J. Super.* 333 (App. Div. 1975); *Howard v. West Jersey and Seashore R.R. Co.*, 102 *N. J. Eq.* 517 (Ch. Div. 1928), aff'd o. b., 104 *N. J. Eq.* 201 (E. & A. 1929); or (2) a defendant has failed to disclose information which he had a statutory duty to disclose, and such non-disclosure prevented a plaintiff from realizing that he possessed an actionable claim, *see, e.g., State v. United States Steel Corp.*, 22 *N. J.* 341, 355–360 (1956); *Noel v. Teffeau*, 116 *N. J. Eq.* 446 (Ch. Div. 1934). Mindful, however, of the equitable underpinnings of the doctrine,

our courts have generally agreed that the doctrine should also be applicable in any case in which

> \* \* \* [after a consideration of] all the circumstances of the case conscience and [the] duty of honest dealing [between a plaintiff and defendant] should deny [the defendant] the right to repudiate the consequences of his [wrongful] representations or conduct \* \* \* \*.
> [*Patrick v. Groves*, 115
> *N. J. Eq.* 208, 210 (E. & A. 1934)]

*See Kyle v. Green Acres at Verona, Inc.*, 44 *N. J.* 100, 111 (1965).

Contrary to plaintiffs' assertions, the facts of this case present no basis for the successful invocation of the doctrine of equitable estoppel. Hartnett did not make any false representations to plaintiffs. Nor was he under any duty — statutory or otherwise — to disclose his identity. Hence, his request that his name remain confidential can in no way be labeled "wrongful."

Indeed, any conclusion to the contrary would run counter to the policies underlying the New Jersey News Media Privilege Act, *N. J. S. A.* 2A:84A–21. That Act

> \* \* \* reflects our Legislature's judgment that an uninhibited news media is more important to the proper functioning of our society than is the ability of either law enforcement agencies, the courts or criminal [or civil litigants] to gain access to confidential [sources and] news data.
> [*In re Farber*, 78 *N. J.* 259, at 287
> (1978) (Pashman, J., dissenting) *cert.*
> den. *New York Times Co. v. New
> Jersey*, —— *U. S.* ——, 99 *S. Ct.* 598,
> 58 *L. Ed.* 2d ——]

It therefore grants newsmen an immunity from disclosure "both absolute and comprehensive" in order that the "strict confidentiality . . . essential to the workings of a free press" not be undermined. *Id.* at 288 (Pashman, J., dissenting).

A holding that a news source had engaged in wrongful conduct by requesting confidentiality would fly in the face of the Act's underlying rationale. Such a ruling would deter persons in the position of Mr. Hartnett from revealing

newsworthy information and thus prevent the press from carrying out its constitutional role.

Hartnett thus did not engage in "inequitable" conduct by refusing to disclose his identity. Moreover, his actions did not cause plaintiffs' claims to be subject to the bar of the statute of limitations. Plaintiffs caused their own hardship by negligently failing to file a "John Doe" complaint against the "source" of the allegedly libelous article prior to January 9, 1976. Indeed, even after they learned of Hartnett's precise identity, they unexplainedly waited over three months before joining him as a defendant. The equities of this case therefore clearly favor Hartnett.

Accordingly, I concur in the majority's conclusion that plaintiffs' claims against Hartnett are time-barred. Hence, those claims must be dismissed.

PASHMAN, J., concurring in the result.

*For reversal and remandment*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and HANDLER—7.

*For affirmance*—None.