John JORDAN, Plaintiff,

v.

Ben TAPPER, D.O., et al., Defendants.

Civ. A. No. 90–2593(CSF).

United States District Court,
D. New Jersey.

April 28, 1992.

576

Roseanne Sellani, Cherry Hill, N.J., for plaintiff John Jordan.

Joel Benjamin Korin, George & Korin, Woodbury, N.J., for defendant Ben Tapper, D.O.

Yves C. Veenstra, Parker, McCay & Criscuolo, Marlton, N.J., for defendant J. Dooling, R.N.

Robert Emil Paarz, Horn, Kaplan, Goldberg, Gorny & Daniels, Atlantic City, N.J., for defendant Kenneth Schulner.

Richard A. Grossman, Grossman & Kruttschnitt, Brick, N.J., for defendant Pauline Schultz.

John R. Orlovsky, Orlovsky, Moody & Gabrysiak, W. Long Branch, N.J., for defendant Gerald D. Hayken.

Louis J. Dughi, Jr., Dughi & Hewit, Mt. Laurel, N.J., for defendant Harold W. Rushton.

MEMORANDUM AND ORDER

WOLFSON, United States Magistrate Judge.

Plaintiff has moved to amend his complaint to name additional defendants pursuant to *Fed.R.Civ.P.* 15(c). Specifically, plaintiff seeks to add Kenneth Kozloff, Senior Vice President/Administrator of Zurbrugg Memorial Hospital; George Hartnett, President of Zurbrugg Memorial Hospital; Emergency Physicians Associates, P.A. (hereinafter "EPA"); James George, M.D., President of EPA; Ronald Sexton, agent of EPA; and Steven Oxler, M.D., Director of Emergency Services at Zurbrugg Memorial Hospital.

Plaintiff first filed this motion in May, 1991. Oral argument was heard on July 19, 1991 with appearances by counsel for the plaintiff, the defendant, Ben Tapper, D.O., and Zurbrugg Memorial Hospital (hereinafter "Zurbrugg" or "Hospital"). This court reserved decision pending receipt and review of affidavits from the proposed defendants on the issue of actual notice. Affidavits and additional briefs were submitted by the plaintiff and Zurbrugg in August, 1991.[1] Also, affidavits and briefs were submitted by counsel on behalf of the proposed defendants, James George, M.D., Steven Oxler, M.D., Ronald Sexton, and EPA. Thereafter, further oral argument was heard by this Court on October 7, 1991. This Court again reserved decision on the motion. In the interim, *Rule* 15(c) was amended, effective December 1, 1991. Specifically, paragraph (c)(1) was added to make clear that where federal jurisdiction is based on diversity of citizenship, *Rule* 15(c) would not preclude any relation back that may be otherwise permitted under the applicable state limitations law. Additionally, paragraph (c)(3) was revised to change the result in *Schiavone v. Fortune*, 477 U.S. 21, 106 S.Ct. 2379, 91

1. The plaintiff submitted a letter brief dated August 16, 1991. Mr. Veenstra, attorney for the defendant Zurbrugg, forwarded affidavits on behalf of the proposed defendants, Kozloff and Hartnett, on August 22, 1991.

L.Ed.2d 18 (1986) with respect to the problem of a misnamed defendant. In light of these recent amendments, this court held an informal hearing on January 21, 1992 to discuss with counsel the probable effect of the rule change on the plaintiff's pending motion. All counsel agreed that the newly revised *Rule* 15(c) applied. Therefore, plaintiff withdrew the original motion for leave to file an amended complaint and refiled the present motion with the consent of all parties, and as instructed by this Court. See this Court's Order dated January 23, 1992. The court then requested all parties to submit additional briefs concerning the effects of the revisions to *Fed. R.Civ.P.* 15 (c).[2] Oral argument was then heard on March 16, 1992. This court having now thoroughly considered all moving and opposition briefs, as well as oral arguments by counsel in this matter, and for the reasons discussed below, orders that the plaintiff's motion to amend the complaint be denied.

BACKGROUND

This is a medical malpractice action brought by the plaintiff, John Jordan, against numerous defendants. The plaintiff alleges that the defendants were negligent in their failure to diagnose and properly treat a cervical fracture he suffered following a diving accident which eventually caused the 21–year old plaintiff to develop permanent quadriplegia.

The accident occurred on June 29, 1988. Plaintiff was immediately transported to the Zurbrugg Emergency Department, where he received treatment until the early morning hours of June 30, 1988. It is this 24 hour period of treatment which gives rise to plaintiff's complaint.

Upon discovering plaintiff's paralysis a number of hours after his admission, Zurbrugg transferred plaintiff to Jefferson Hospital where he continued to suffer significant medical problems. In addition to the paralysis, plaintiff developed respiratory problems and later pneumonia, deep vein

thrombophlebitis in his right calf, an ear infection, sinusitis, and a staph infection on his legs. Plaintiff underwent surgery for a posterior spinal fusion with bone graft on July 4, 1988. On July 29, 1988, the plaintiff was transferred to Jefferson Rehabilitation Unit where he continued with high fevers and respiratory difficulties. On August 12, 1988, Mr. Jordan developed fluid in the lungs which necessitated his transfer to the medical unit at Jefferson Hospital. After antibiotic treatment, plaintiff was then returned to the rehabilitation unit on August 30, 1988. Finally, on September 22, 1988, the plaintiff was transferred to the Magee Rehabilitation Hospital where he spent the next three months before final discharge. Plaintiff currently resides in Seattle, Washington.

Plaintiff initially filed suit in federal court on June 28, 1990. On the same date, plaintiff filed two separate actions in the Superior Court of New Jersey, Burlington County, Law Division. The first action stated a claim against Owens–Illinois, Delanco Township, and the State of New Jersey, alleging negligent dumping of a submerged 55–gallon drum, as well as negligent maintenance of the swimming area where plaintiff had his accident. The second state action asserted medical malpractice claims against the same defendants named in this federal case, as well as fictitious John Doe defendants.

The defendants in the state medical malpractice action were not served with process and only learned of the existence of that action when the defendant, Owens–Illinois, moved to consolidate both state court matters. Additionally, the defendants in this federal action were not aware of the pending state cases, since plaintiff failed to include a certification of other actions filed. On January 11, 1991, the Superior Court of New Jersey consolidated the state actions despite plaintiff's opposition. Thereafter, plaintiff voluntarily dismissed the consolidated state court matters on February 22, 1991, electing to pursue

2. Although the plaintiff withdrew the original application for leave to amend and refiled the present motion pursuant to the new rule change to *Rule* 15(c), the plaintiff as well as the defendants incorporate their briefs on the original motion with all briefs filed concerning the present motion to amend the complaint.

only the medical malpractice claim in the United States District Court.

The federal complaint was served on the originally named defendants as follows: defendant Ben Tapper, D.O.—date of service July 17, 1990; Zurbrugg—date of service July 26, 1990; Velma Deppe, R.N.—date of service July 18, 1990; Lynn Costello, R.N., J. Dooling, R.N., Pat Edwards, R.N.—date of service July 17, 1990; and Kenneth Schulner, M.D.—date of service July 17, 1990.

Together with the summons and complaint, interrogatories were also served upon all defendants. Additionally, a document request was served on Zurbrugg which specifically requested a copy of Dr. Tapper's contract with Zurbrugg in effect during June, 1988.[3] Responses to plaintiff's discovery requests were due from the defendants on or about 45 days from the date of service, *Fed.R.Civ.P.* 33 and 34. However, production of these documents was not held until November 26, 1990. At that time, plaintiff's counsel was informed that Dr. Tapper did not individually contract with Zurbrugg but was instead employed by a contracting agency. Therefore, the pertinent contracts were between the Hospital and this contracting agency, and between Tapper and the agency. When plaintiff requested that the contract between the Hospital and EPA be produced, Mr. Korin, attorney for Dr. Tapper objected.[4]

**3.** In plaintiff's initial brief, in support of his motion to amend, filed on or about June 16, 1991, it states that the document request was served on the Hospital on July 9, 1990. Earlier, however, plaintiff sets forth the date of service of process on the Hospital as July 26, 1990. It may be that the materials were, in fact, dated July 9, 1990, but were not served or received by the Hospital until the later date of July 26, 1990. Therefore, the court will assume the later date to be accurate.

**4.** Defendant's objection was two-fold. First, plaintiff had not specifically identified the exact contract in the original request and second, the contract was represented as containing sensitive and confidential financial information. Despite assurances that financial information could be redacted, Tapper's attorney continued to object to the document production.

Not only did the defendants[5] refuse to produce this contract, but they also refused to identify the name of the contracting agency employing Dr. Tapper. Plaintiff made another unsuccessful request for a copy of the contract on January 24, 1991.

On March 21, 1991, counsel for all parties appeared before this court for a *Rule* 16 Management Conference. At that time, a scheduling order was entered which included a provision requiring the defendants to produce the contract between Zurbrugg and EPA (the agency employing Dr. Tapper). On April 10, 1991, plaintiff finally received a copy of the Zurbrugg/EPA contract.

Based on this contract, the plaintiff seeks to add as defendants, EPA; James George, M.D., J.D., President of EPA; Steven Oxler, M.D., Director of Emergency Services at Zurbrugg in 1988; Ronald Sexton, agent of EPA; George D. Hartnett, President of Zurbrugg in 1988; and Kenneth Kozloff, Senior Vice President/Administrator of Zurbrugg in 1988.[6]

Notably, Joel Korin, Esq., counsel for the defendant, Dr. Tapper, is a partner with the proposed defendant and President of EPA, James George, in the law firm George and Korin, P.C. In fact, the same building houses both the George and Korin law firm and EPA. Furthermore, the contract between Dr. Tapper and EPA, which plaintiff received on June 17, 1991, confirmed Dr. Tapper's obligation to notify

**5.** Apparently the Hospital's attorney, Barbara Snope, who was present at the document inspection, was initially agreeable to producing the contract but, at Mr. Korin's urging, refused plaintiff's demand.

**6.** George D. Hartnett, James George, and Ronald Sexton, were signatories to the amendment to the emergency services agreement of April 19, 1988 between Zurbrugg and EPA. Kenneth Kozloff, James George, and Ronald Sexton were the signatories to the original agreement made between these parties on April 19, 1985. Steven Oxler was designated in this agreement as the Director of Emergency Services who would be responsible for direct overall supervision of the physicians and would provide liaison among EPA, the medical staff, and the Hospital. See Agreement, dated April 19, 1985, p. 3 at paragraph C.

EPA of any malpractice claims immediately upon knowledge of the existence of the claim. Presumably, James George, as President of EPA, received such notice from Tapper. Thus, the relationship between Korin and George raises disturbing issues in this litigation. First, there may be a conflict in Korin's representation of Tapper.[7] Second, Korin's reluctance to provide plaintiff with the contract between the Hospital and EPA becomes suspect as a ploy to shield his partner, James George, from suit.[8] More significantly, it suggests that Dr. George knew or should have known that EPA might be an appropriate party to be sued in this case on the allegations involving administrative, supervisory, and hiring negligence.

Plaintiff's motion presents critical issues. First, were the John Doe descriptions plaintiff included in his state court complaint sufficient to place the proposed defendants on notice of plaintiff's claim so as to allow the relation back of the amendment as provided under *Fed.R.Civ.P.* 15(c)(1). Second, has the plaintiff satisfied the notice requirements of *Rule* 15(c)(3), which still demand that the plaintiff show that the defendants "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." *Fed. R.Civ.P.* 15(c)(3)(B).

**7.** This court will not rule on the issue of Korin's potential conflict at this time, but plaintiff's counsel has raised the matter in her original brief dated June, 1991, and this court acknowledged the possibility of the conflict at oral argument.

**8.** In the original brief, the plaintiff argued that there should be an equitable tolling of the limitations period due to the knowing concealment of a contract between the defendant Hospital and the proposed defendant EPA. Plaintiff contended that his counsel was actively misled by defense counsel as to the true identity of Dr. Tapper's employing agent, since counsel withheld the relevant employment contracts between not only Dr. Tapper and EPA, but between the Hospital and EPA. Relying on the defendants' representation that no contract existed which established Dr. Tapper's duties and responsibilities, but that any contract related only to financial issues of employment, the plaintiff dismissed the state court medical mal-

DISCUSSION

## I. *Sufficiency of Plaintiff's Fictitious Party Pleading*

The Federal Rules of Civil Procedure encourage and indeed provide a liberal policy for amending pleadings. Under *Fed R.Civ.P.* 15(a), leave to amend pleadings "shall be freely given when justice so requires." But more than *Rule* 15(a) is implicated. Here, the plaintiff seeks to add new defendants to the complaint after the statute of limitations period has expired. Plaintiff contends that the relation back provision of *Fed R.Civ.P.* 15(c) allows his proposed amendment to be deemed filed as of the time the original complaint was filed.

However, *Rule* 15(c) applies a stringent standard for a plaintiff seeking to relate back the joinder of a party. In this context, the Supreme Court has held that an amendment adding a new party "relates back" to the original complaint only if four conditions are satisfied:

(1) the basic claim must have arisen out of the conduct set forth in the original complaint; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have

practice case which might have preserved an action against the proposed defendants due to New Jersey's state court practice of fictitious name pleading.

Prior to December 1, 1991, *Fed.R.Civ.P.* 15(c) did not permit relation back of amendments through the naming of a fictitious defendant. In other words, the federal courts did not follow the practice of the New Jersey courts which allow the plaintiff the benefit of fictitious party pleading where the defendant's true name is unknown to the plaintiff. However due to the new rule change and the addition of *Rule* 15(c)(1), which equally bestows the benefits of applicable state limitations law to amendments, the plaintiff's argument for equitable estoppel, or equitable tolling of the limitations period, is rendered moot. Indeed, plaintiff conceded at the March 16, 1992 hearing that any alleged inequitable conduct by the defendants in withholding the employment contract from the plaintiff in discovery is eviscerated by the amendment of *Rule* 15(c).

been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986); *see Bechtel v. Robinson,* 886 F.2d 644, 651 (3rd Cir.1989). Congress recently altered the *Schiavone* analysis by adopting an amended version of *Rule* 15(c), effective December 1, 1991. *Rule* 15(c), as amended, provides that:

> An amendment of a pleading relates back to the date of the original pleading when:
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by *Rule* 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Under the amendment, the court must look to state law to determine if it permits relation back. *Fed.R.Civ.P.* 15(c)(1). If not, the court must apply *Rule* 15(c)(3) which alters the fourth *Schiavone* requirement by providing that the party to be added must have received notice within the period for service of the summons and complaint, rather than within the limitations period. Significantly, the amended rule does not change the first, second, or third *Schiavone* requirements. *See Fed. R.Civ.P.* 15(c)(3).

Thus, this court must first examine New Jersey state law to determine if it would permit relation back. *Fed.R.Civ.P.* 15(c)(1). Notably, through the fictitious party rule embodied in *New Jersey R.* 4:26–4, courts in New Jersey have permitted plaintiffs to avoid the statute of limitations where they are unable to ascertain the true name of a defendant during the limitations period. *R.* 4:26–4, reads in relevant part:

> In any action, ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient to identify him. Plaintiff shall on motion, prior to judgment, amend his complaint to state defendant's true name....

This rule allows the plaintiff to amend his complaint after the limitations period has run, even if the defendant did not have notice of the action within the statutory time limit. *See Viviano v. CBS, Inc.,* 101 N.J. 538, 548, 503 A.2d 296 (1986).

The seminal case on the application of *R.* 4:26–4 is *Farrell v. Votator Div. of Chemetron Corp.,* 62 N.J. 111, 299 A.2d 394 (1973). A court will allow the plaintiff to amend his complaint after the statute of limitations has expired where justified upon a "proper balance of considerations of individual justice and repose...." *Id.* at 122, 299 A.2d 394. Factors include the diligence with which plaintiff sought to identify the defendant, the speed with which the complaint was amended and the defendant served, the impact that passage of time has had on the ability to gather evidence, and any prejudice to the defendant. *Id.* Prejudice will not be found in defendant's inability to assert the statute of limitations as a defense: "clearly [defendant] has no vested right in its own formulation of the two year limitations bar." *Id.*

> Justice impels strongly towards affording the plaintiffs their day in court on the merits of their claim; and the absence of prejudice, reliance or unjustifiable delay, strengthens the conclusion that [the complaint may be amended] ... without any undue impairment of the

two year limitation or the considerations of repose which underlie it.

*Id.* at 122–23, 299 A.2d 394.

In the instant case, plaintiff did not plead fictitious defendants in the original complaint filed in federal court because, at the time, fictitious party practice was not availing under the Federal Rules of Civil Procedure. Specifically, the Third Circuit, in *Britt v. Arvanitis*, 590 F.2d 57 (3rd Cir. 1978), held that *Rule* 15(c) would not permit relation back of an amendment where a fictitious defendant was originally identified in the complaint. *Id.* Moreover, the Federal Rules of Civil Procedure have no counterpart to New Jersey's fictitious pleading rule. Consequently, plaintiff filed a similar medical malpractice action in New Jersey state court, pleading fictitious defendants in counts alleging medical negligence, supervisory negligence, vicarious liability, and agency.

■ In plaintiff's brief, counsel argues that both the federal and state court actions were filed simultaneously because plaintiff had no recourse in federal court to name fictitious defendants and further that counsel had no time to investigate the true identities of the defendants on the eve before the limitations period was to expire. Plaintiff argues that amended *Rule* 15(c)(1) now entitles him to apply the relation back feature of New Jersey's fictitious party rule to the present motion to amend. In particular, the plaintiff contends that his state court complaint, which named fictitious defendants, should be considered in determining whether plaintiff has complied with the relation back requirements of *Fed. R. Civ. P.* 15(c)(1). This court agrees.[9]

Having determined that the plaintiff enjoys the benefit of the New Jersey fictitious pleading rule, this court must now examine plaintiff's state court complaint to determine whether the fictitious party pleading in that document provides an "appropriate description sufficient to identify" those defendants plaintiff now seeks to add in this action. *R.* 4:26–4. The relevant

fictitious party designations appear in the second, eighth, and thirteenth counts. This court will review each of these counts in turn.

■ Addressing the eighth count first, this Court concludes that it does not adequately identify any of the proposed defendants. Specifically, the eighth count deals with John Doe doctors who examined, treated, or cared for the plaintiff during the relevant time period. In contrast, the proposed defendants are being added on claims of alleged supervisory and administrative negligence as well as vicarious liability and agency. Not one of the proposed individual defendants or EPA actually examined, treated, or cared for the plaintiff. Therefore, plaintiff cannot rely on the eighth count to describe the proposed defendants.

■ Next, plaintiff's thirteenth count alleges negligence against three Mary Doe nurses or administrators who allegedly deviated from accepted standards of nursing practice. Significantly, the thirteenth count is identified and captioned as "nursing negligence". Again, none of the proposed defendants here could be construed as nurses so as to fall within the fictitious designation provided in this count.

It is noteworthy, however, that the plaintiff specifically identified fictitious parties in their administrative capacities in this count. Plaintiff argues that the Hospital defendants, namely Hartnett and Kozloff, as administrators of Zurbrugg, come within the ambit of this count. Nevertheless, this argument must fail due to the thirteenth count's plain language. The fictitious designations of administrators clearly identified individuals who "failed to exercise ordinary care and failed to exercise a degree of care and skill commonly exercised by nurses in like cases." See Plaintiff's State Court Complaint, Thirteenth Count, Paragraph 2. Neither George Hartnett nor Kenneth Kozloff, and certainly none of the proposed EPA defendants, rendered any

9. Indeed, defendants' counsel have concurred that plaintiff should be given the benefit of the

Joe Doe descriptions pleaded in the state action.

care or treatment to the plaintiff at any time during the 24 hour period he remained at Zurbrugg. Accordingly, count thirteen cannot be utilized to include any of the proposed defendants in this matter.

■ Finally, we turn to the second count of plaintiff's state court complaint, which is the most salient count for this motion. This count is identical to the second count pleaded in plaintiff's federal court complaint, which alleges administrative and supervisory negligence. Although this count lacks an actual fictitious designation, *i.e.* "John Doe" or "XYZ Company or Corporation", plaintiff argues that the court should find a fictitious designation "by implication"[10] since the second count names the staff, agents, servants, and employees of Zurbrugg who act in their vicarious capacity for the Hospital and were negligent in their duties of supervision and administration of hospital practice.[11] Count Two specifically provides a description of hospital agents and administrators who were allegedly negligent in their failure to provide proper medical services, proper supervision, and proper administrative procedures for selection, review, and appointment of practitioners to the medical staff.

The defendants' counter argument is fairly straightforward. Namely, plaintiff's complaint fails to sufficiently identify any of the proposed defendants so as to put them on notice that they are proper parties to this action. This is a critical aspect of fictitious party pleading under New Jersey law.

*R.* 4:26–4 requires that the plaintiff provide an appropriate description of the fictitiously named defendant in order to permit the relation back of an amendment after a statute of limitations has expired. This is so as to resolve any conflict between the fictitious pleadings practice and the principle of repose which underpins statutory periods of limitation. For example, in *Rutkowski v. Liberty Mutual Insurance Company*, 209 N.J.Super. 140, 506 A.2d 1302 (App.Div.1986), the court denied an amendment filed after the statute of limitations had run because the fictitious description was insufficient to identify the intended defendants. The court reviewed the original complaint, which contained allegations against named and fictitious defendants "who had designed, manufactured, sold, distributed, repaired, modified, renovated, or were 'otherwise responsible' for the allegedly defective machine." *Rutkowski*, 209 N.J.Super. at 143, 506 A.2d 1302. The court could not imagine how this "quoted phrase would have indicated to even the most thorough reader that plaintiff intended to make a claim for negligent safety inspections." *Id.* The court was unmoved by the fact that the proposed defendant was aware of the lawsuit before the statu-

---

**10.** Plaintiff maintains that Hartnett, Kozloff, and Oxler, who were agents of the Hospital at the time, were included in this count by implication.

**11.** Specifically, the second count of both the state court complaint and the federal court complaint, entitled "Hospital Negligence" states at the third paragraph: "notwithstanding such undertaking, defendants Zurbrugg Memorial Hospital, Riverside Division, its staff, agents, servants, and employees negligently failed to exercise ordinary care and failed to exercise that degree of care and skill commonly exercised by institutions and professionals of like kind. In addition to the foregoing and without any way limiting same, plaintiff further says that the defendant, Zurbrugg Memorial Hospital, Riverside Division, was otherwise negligent in that it failed to use the required degree of care in that it (a) failed to provide proper supervision of the standard of medical care given in said institutions; (b) failed to provide medical services consistent with regulatory and professionally accepted standards; (c) failed to provide proper supervision and procedures to insure the making of important tests and diagnoses; (d) failed to provide proper supervision and procedures to insure that necessary consultations were provided; (e) failed to properly supervise and provide administrative procedures for selection, review and appointment of practitioners to the medical staff; (f) failed to provide a medical and nursing staff which would properly recognize the potential dangers and hazards associated with proper evaluation of a swimming/diving accident; (g) failed to provide a nursing and medical staff which would properly evaluate a developing catastrophe; (h) failed to supervise and/or take proper protective measures to safeguard against hazards and dangers associated with impending spinal cord compromise; and (i) failed to provide proper administrative supervision of nursing and medical care consistent with acute central nervous system accidents."

tory period had expired. In fact, plaintiff's theory of liability for defendant's negligence in the performance of safety inspections did not emerge until after plaintiff's "belated discovery of the insurer's role as safety consultants." *Id.*, 209 N.J.Super. at 144, 506 A.2d 1302. The court reasoned that to permit such a general description of fictitious defendants would emasculate even New Jersey's liberal pleading rules. *Id.*, 209 N.J.Super. at 147, 506 A.2d 1302.

The holding in *Rutkowski* is reinforced by prior New Jersey Supreme Court opinions. For instance, in *Lawrence v. Bauer Publishing and Printing Limited*, 78 N.J. 371, 396 A.2d 569 (1979), the plaintiff's late addition of a party was held time barred since it occurred beyond the one year statute of limitations applicable to libel actions in New Jersey. The court specifically addressed *R* 4:26–4, which suspends the running of the statute of limitations until the actual identity of a defendant is discovered. *Id.*, 78 N.J. at 375–76, 396 A.2d 569. The court found that the plaintiffs were "clearly aware of *R* 4:26–4 inasmuch as they did file a "John Doe" complaint against the "composer and writer" of the allegedly libelous article on May 8, 1975. By failing to do likewise with respect to the article's "source" they inexcusably slept on their rights and therefore cannot now be heard to complain that their suit against Hartnett is time barred." *Id.*, 78 N.J. at 376, 396 A.2d 569. The same argument could be made here. The plaintiff crafted fictitious designations for doctors and nurses in his state court complaint, but failed to do so with respect to employing agents or administrators.

Further, in *Viviano v. CBS, Inc.*, 101 N.J. 538, 503 A.2d 296 (1986), although the Court extended plaintiff's fictitious designation of "John Doe Company manufacturer of record press machine" to include a new defendant as the manufacturer of a defective component, the court cautioned plaintiffs in the future to more accurately designate fictitious parties if their true identities are unknown. Thus, the designations should include not only the manufacturer of the subject machine but its component parts as well. Specifically, the "plaintiff should allege in the body of the complaint, in general terms if necessary, his or her causes of action against those entities." *Id.*, 101 N.J. at 555, 503 A.2d 296. The warning concerning well-tailored fictitious designations applies equally to the case at hand.

*Viviano* is significant in that the court relaxed the provisions of *R* 4:26–4 because the plaintiff had been actively misled by the defendant CBS, Inc. about the identity of the component part manufacturers prior to the running of the statute of limitations. Here, plaintiff's counsel initially contended that she was misled about the existence of EPA due to defense counsel's obstructionist refusal to disclose the relevant employment contracts. But there the similarity ends. In *Viviano*, the misleading conduct occurred *prior* to the running of the statute of limitations. Here, defense counsel's alleged misrepresentations or misleading conduct occurred *after* the statute of limitations had expired. Consequently, the plaintiff cannot find support in *Viviano*.

In summary, given the strictures placed on the plaintiff to provide a fictitious description sufficient to identify a defendant, this court is hard-pressed to find that the plaintiff has satisfied this requirement. The second count is the only part of plaintiff's complaint that alleges administrative and supervisory negligence. Yet, plaintiff failed to actually plead a fictitious name. Instead, plaintiff generally complained against the staff, agents, servants, and employees of the Hospital in their vicarious capacity.

Thus, plaintiff has failed to satisfy the express provisions of *R* 4:26–4, which state that "if the defendant's true name is unknown to the plaintiff, process may issue against the defendant *under a fictitious name stating it to be fictitious ...*" Under this Rule, *none* of the proposed defendants [12] could be placed on notice of plain-

---

12. Plaintiff argues that neither Hartnett nor Kozloff will be substantially prejudiced by their late inclusion in this lawsuit because the Hospital has been represented by counsel since the

tiff's action with regard to the second count because plaintiff failed to identify these defendants by a fictitious name and failed to state it to be fictitious. Therefore, *Fed.R.Civ.P.* 15(c)(1) does not provide a basis for the plaintiff to now amend his complaint to add these defendants.

## II. *Notice Requirements of Rule 15(c)(3)*

Having determined that *Rule* 15(c)(1) does not provide a basis for plaintiff to amend his complaint, this court now turns to whether the plaintiff has satisfied the provisions of *Fed.R.Civ.P.* 15(c)(3). The precise issue to be determined is whether the notice received by the proposed defendants was sufficient to comply with the requirements of *Rule* 15(c).

The critical difference between superseded *Rule* 15(c) and revised *Rule* 15(c)(3) is the extension of time now allowed for notification of an action. In short, Congress altered the severe impact of the fourth requirement of *Schiavone*, that notice be received within the limitations period, by providing that the intended party must have received notice within the period for service of the summons and complaint, rather than within the statutory limitations period.[13] The amended rule does not otherwise change the first, second, or third *Schiavone* requirements.

These requirements are:

"(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that but for a mistake concerning identity, the action would have been brought against it...."

*Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).

The first *Schiavone* factor is now found in *Rule* 15(c)(2). Satisfaction of this element is not disputed. The claims against the proposed defendants, which sound in corporate and administrative negligence, and negligent selection, review and appointment of practitioners to the medical staff, relate to and arise out of the same events and conduct alleged in plaintiff's original complaint. This court must then determine whether the other two requirements of *Schiavone* have been met.

The second and third *Schiavone* factors are substantially identical to *Rule* 15(c)(3)(A) and (B). Thus, the plaintiff must demonstrate that the new parties received actual notice of the plaintiff's claim and that each party knew or should have known that but for a mistake concerning identity, the suit would have been brought against them. Both these requirements must be fulfilled within the period now provided by the newly revised *Rule* 15(c)(3). Here, the statute of limitations expired on or about June 29, 1990.[14] Given the benefit

---

original suit was filed and the Hospital's interest is consistent with that of the new defendants. However, this Court finds that the individuals will be prejudiced by being dragged into this matter, after the limitations periods has expired, especially where plaintiff's complaint failed to make the appropriate fictitious designation that might have served as notice to the administrators that they were being sued. And finally, the general descriptions of Hospital administrators and employees do not offer appropriate descriptions of the proposed EPA defendants under the fictitious pleading rule.

**13.** *Fed R.Civ.P.* 15(c)(3) provides that the intended defendants receive notice within the period provided by *Rule* 4(m) for the service of the summons and complaint. *Rule* 4(m) was a proposed amendment to *Fed.R.Civ.P.* 4 which governs process. However, this proposed amendment was never adopted and therefore *Rule*

4(m) does not exist. Hence, the defendants argue that *Rule* 15(c)(3) does not serve to overrule *Schiavone* and therefore the proposed defendants must have received notice within the limitations period. This court rejects defendants' arguments. The clear intent and purpose of the 1991 amendment to *Rule* 15(c) was to reduce the harsh results of *Schiavone*. This was explicitly stated. *See* Advisory Committee Notes, 1991 amendment to *Rule* 15(c)(3). In essence, this can extend the period for notice for 120 days after the limitations period has run (time allowed for service of summons and complaint).

**14.** Initially, plaintiff sought to invoke the discovery rule to toll the statute of limitations in order to bring in new defendants. However, the discovery rule is intended to toll the limitations period where plaintiff lacks knowledge of a cause of action, not the identity of potential

of the 120 day rule for service of the summons and complaint as now stated under *Rule* 15(c)(3), the proposed defendants must have received actual notice of this action prior to October 28, 1990.

■ At the direction of the court, the proposed defendants submitted affidavits specifically addressing the issue of notice. With regard to the Hospital administrators, Kenneth Kozloff and George Hartnett, counsel for the Hospital obtained sworn statements by the Hospital's Director of Risk Management and the Executive Director,[15] which confirmed that neither Kozloff nor Hartnett would have received a copy of the complaint, and in fact, did not at any time receive a copy of the plaintiff's complaint, nor were they advised of this lawsuit. Thus, Kozloff and Hartnett did not have actual notice of plaintiff's complaint within the period prescribed by *Fed. R. Civ.P.* 15(c)(3).

■ Additionally, Mr. Sexton, the Administrator of EPA, filed an affidavit stating that on or about August 30, 1990, he received a letter from EPA's claim representative making him "aware" of plaintiff's complaint against Dr. Tapper. However, Mr. Sexton never actually saw the complaint and was not on notice of any allegations that might identify him as a possible defendant in this action. While notice may be formal or informal, more than mere awareness of the suit is necessary to constitute actual notice under the rule. *See Edwards v. Occidental Chemical Corp.,*

892 F.2d 1442, 1447 (9th Cir.1990); *Keller v. Prince Georges County,* 923 F.2d 30, 33–34 (4th Cir.1991). Thus, Mr. Sexton may have been made aware of plaintiff's complaint against Dr. Tapper within the time period prescribed under *Rule* 15(c)(3), but he cannot be held to have received actual notice of claims against him. Therefore, plaintiff has failed to satisfy the actual notice requirement with regard to Mr. Sexton.[16]

Plaintiff has also failed to satisfy the notice requirement as to Dr. Oxler, the Director of Emergency Services at Zurbrugg. Dr. Oxler states in his affidavit, that Dr. Tapper informed him in July, 1990 that plaintiff had sued Tapper. However, Dr. Oxler never saw the complaint. He was merely aware that Dr. Tapper was being sued as a result of medical care he rendered to plaintiff. Since Dr. Oxler was not personally involved in plaintiff's care at Zurbrugg, he had no reason to believe that he would have been named as a possible defendant in this matter.

Finally, with regard to Dr. George and EPA,[17] it is conceded that they received notice of plaintiff's complaint against Dr. Tapper on or about July 20, 1990, after the summons and complaint had been served on Dr. Tapper. Dr. George personally reviewed the allegations of the complaint at that time, since it was the business, custom, and practice of EPA for him to do so. Consequently, as to Dr. George and EPA, plaintiff will have satisfied *Rule* 15(c)(3) if

---

defendants. *See e.g. Apgar v. Lederle Laboratories,* 123 N.J. 450, 588 A.2d 380 (1991); *Viviano v. CBS, Inc.,* 101 N.J. 538, 503 A.2d 296 (1986). Thus, the discovery rule is inapplicable here. In fact, plaintiff abandoned this argument, and indeed, it was eviscerated, when all parties conceded that New Jersey's fictitious pleading rule is now integrated into the new *Fed.R.Civ.P.* 15(c)(1). Moreover, given the extended period of notice now permitted under *Rule* 15(c)(3), plaintiff has the benefit of a longer time period than even the discovery rule would have allowed in this case. Therefore, the discovery rule issue is moot.

15. In an affidavit by J.S. Stein, Director of Risk Management of Zurbrugg, dated August 14, 1991, Mr. Stein avers that the CEO and President did not receive copies of the complaint and that he at no time ever advised either George

Hartnett or Kenneth Kozloff of this lawsuit nor that they might possibly be identified as a defendant in this matter. Another affidavit by Bernadette Mangin, who is the Executive Director of Zurbrugg, confirms that she never advised George Hartnett or Kenneth Kozloff of any claims against them.

16. Additionally, while Mr. Sexton was the administrator of EPA in June and July of 1990, he had no involvement in evaluating the professional ability or qualifications of physicians providing medical emergency services. His responsibilities were limited to the negotiation of the financial terms of the contracts between the physicians and EPA.

17. As President of the EPA, Dr. George submitted an affidavit concerning his notice as well as EPA's notice of plaintiff's lawsuit.

it is determined that Dr. George and EPA knew or should have known that but for a mistake concerning identity, the action would have been brought against them.

██ *Fed.R.* 15(c)(3)(B) permits an amendment to relate back where the intended parties "knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the party." This provision does not differ from the prior *Rule* 15(c), where the plaintiff was permitted to add a defendant not accurately identified in the original complaint. *See Edwards*, 892 F.2d at 1446. Under the old *Rule* 15(c)(2), an amendment was permitted to relate back *"only* where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake, but it does not permit relation back where, as here, there is a lack of knowledge of the proper party." *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980); citing *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir.1978).[18] Accordingly, it is irrelevant whether or not the proposed party knew or should have known that the lawsuit would have been brought against him if there is a lack of mistake in the identification of the proper party in the complaint. *Id.; see also Rylewicz v. Beaton Services Limited*, 888 F.2d 1175, 1181 (7th Cir.1989) (lack of knowledge of the proper party is not sufficient to permit an amendment to relate back under prior *Rule* 15(c)(2) since this would misconstrue the mistake requirement of the rule).

██ The defendants argue therefore that *Rule* 15(c)(3) is inapplicable where the plaintiff has simply failed to ascertain all possible defendants before the statute of limitations has expired. This position is supported by case law. For instance:

> *Rule* 15(c) was intended to protect a plaintiff who mistakenly names a party and then discovers, after the relevant statute of limitations has run, the identity of the proper party. *Fed.R.Civ.P.* 15(c) was never intended to assist a plaintiff who ignored or failed to respond in a reasonable fashion to notice a potential party, nor was it intended to permit a plaintiff to engage in piecemeal litigation.

*Kilkenny v. Arco Marine, Inc.*, 800 F.2d 853, 857–58 (9th Cir.1986), *cert. den.* 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987); *Unicure, Inc. v. Thurman*, 97 F.R.D. 1, 6 (W.D.N.Y.1982); *Guitierrez v. Raymond Intern, Inc.*, 86 F.R.D. 684, 685 (S.D.Tex.1980) (The court noted that *Rule* 15(c) was intended to "mollify harsh results" when a plaintiff sued the wrong party and then, upon discovering the proper party after the limitations period had run, was time-barred to amend the complaint. *"Rule* 15(c) was not drafted to encourage piecemeal litigation wherein a party could pursue one tack comforted by the knowledge that he could amend if his efforts failed.").[19]

██ Moreover, relation back will be refused if the court finds that there is no reason why the proposed parties should have understood that they were not named due to a mistake. *See* 6A C. Wright, A. Miller and M. Kane, *Federal Practice and Procedure*, Sec. 1498 at 139 (1990); *see also Keller v. United States*, 667 F.Supp. 1351 (S.D.Ca.1987), *aff'd without opinion*,

---

**18.** In *Wood v. Worachek, supra,* the plaintiff sought to amend the complaint by substituting a named police officer as a defendant in place of unidentified officers. The Court found that the plaintiff had not mistaken the identity of the named officer but merely lacked knowledge of the proper party. *Id.*, 618 F.2d at 1230. Thus, in actuality, the plaintiff in *Wood* was arguing for a fictitious pleading practice, which was not then recognized under *Rule* 15(c). As with the prior rule, current *Rule* 15(c)(3), (as compared with *Rule* 15(c)(1)), does not envision or allow fictitious pleading; it merely intends to correct a misnomer of a defendant.

**19.** Both *Kilkenny v. Arco Marine, Inc., supra,* and *Guitierrez, supra,* involved plaintiffs who knew of the proper party before the statute of limitations, but did not move to amend until after the statute had run. This court recognizes that that is not the case here. Plaintiff did not discover the identity of the proposed defendants until after the statute had expired. The cited cases are nonetheless pertinent because the plaintiff here is not claiming to have sued the wrong party. See pp. 588–590, *infra.*

930 F.2d 920 (9th Cir.1991) (although a potential defendant was aware of the action prior to statute running, plaintiff's failure to add defendant initially could have been viewed as an intentional decision not to sue rather than a mistake in identity). *Potts v. Allis–Chalmers Corp.*, 118 F.R.D. 597 (N.D.Ind.1987) (where plaintiff should have been aware of proper defendant at the outset, delay in amending complaint could be viewed by defendant as strategy, rather than mistake); *Curry v. Johns–Manville Corp.*, 93 F.R.D. 623 (E.D.Pa. 1982) (no relation back where third-party defendants were impleaded five months before plaintiffs moved to add them as direct defendants, because defendants could have interpreted plaintiffs' decision as strategy not error).

But, plaintiff relies on *Kinnally v. Bell of Pennsylvania*, 748 F.Supp. 1136 (E.D.Pa.1990) to support his argument on the issue of a mistake in identity. In *Kinnally,* the court found that the defendants read the mistake provision under *Rule* 15(c) too narrowly. *Id.* at 1141–42. The court opined that under *Rule* 15(c) "mistake is not limited to instances in which the wronged party is blamed while the real culprit remains unknown. A mistake also includes errors in legal form, for example: where a plaintiff has full knowledge of all relevant actors but lists a technically incorrect party in her complaint." *Id.* at 1142, citing *Brooks v. Hartford, Inc.*, 715 F.Supp. 1034 (D.Kan.1989). Here, plaintiff cannot be said to have listed a technically incorrect party in his complaint, since the Hospital has been accurately named as a proper party under the second count for supervisory and administrative negligence, even though other possible unknown defendants could also have been named.

Plaintiff also offers *Kinnally* as support for his contention that the Third Circuit applies a more liberal interpretation of the mistake in identity requirement under *Rule* 15(c). But the District Court opinion in *Kinnally* does not stray beyond the narrow interpretation followed by the Seventh Circuit, which permits an amendment to relate back only where there has been an error made concerning the identity of the proper party—not where there is a lack of knowledge of a proper party. *See Rylewicz v. Beaton Services Limited,* 698 F.Supp. 1391 (N.D.Ill.1988), *aff'd* 888 F.2d 1175 (7th Cir.1989).

■ Turning now to the only proposed defendants who have met the notice requirements of *Rule* 15(c)(3)(A), Dr. George and EPA, the circumstances of this case raise suspicion as to what they may have known or should have known with regard to their potential to be named as defendants in this action. First, it is clear that the Hospital contracted with EPA to provide licensed emergency room doctors. At the very least, EPA operated as the Hospital's employing agent. Moreover, a review of the contract between EPA and the Hospital reveals a more intricate relationship between these two entities. Indeed, EPA had an expansive role under the parties' contract and was not simply an employing agent.[20]

Second, as President of EPA, it was Dr. George's duty to review the allegations in plaintiff's complaint. In his affidavit, dated August 4, 1991, Dr. George states that

---

**20.** EPA's obligations included staffing the Hospital's emergency department with licensed physicians, appointment of a director of emergency services who would be responsible for direct overall supervision of physicians and would provide liaison among EPA medical staff and the Hospital. In addition, EPA would provide physician services in the emergency department including "(a) the evaluation and treatment of acute medical needs of every patient submitting himself to the emergency department for medical care, except those requesting treatment by their personal physicians; and (b) consultation with members of the medical staff of the hospital when it is in the best interest of any patient, so long as such consultation is covered by the terms of the professional liability insurance policies covering EPA and its associated physicians"; EPA was to cooperate with the hospital in cost containment and financial aspects of the Emergency Room Department management, public relations, and marketing of the Emergency Room Department; development of Emergency Room Department policies and procedures, as well as a quality assurance program; review of Emergency Department patterns and utilization of professional and non-professional personnel; etc. Significantly, under this agreement, the Hospital could not discharge an EPA physician without EPA's permission.

the plaintiff's original complaint gave no information which would have led him to believe or know that, but for a mistake in identity, plaintiff's action would have been brought against EPA or its employees. Specifically, Dr. George avers that no allegations in plaintiff's complaint gave him any impression that the plaintiff was making a claim against EPA or its employees for "negligent evaluation of Dr. Tapper's ability, negligence in hiring Dr. Tapper or negligence in monitoring the hiring practices and qualifications of [our] independent contractor physicians." Dr. George posits that, a fair reading of plaintiff's original complaint even in its broadest language would not have put a layman on notice that, but for a mistake in identity, he would have been named as a defendant in the original complaint. However, Dr. George's statement is hard to swallow given the fact that he himself is a trained attorney and a partner in the law firm of George and Korin, P.C., which is the same law firm defending Dr. Tapper. Given EPA's extensive role under its contract with the Hospital, in selecting, providing, and supervising the Emergency Room doctors at Zurbrugg, and the clear correlation between those functions and the allegations asserted in plaintiff's complaint under the second count, it is difficult to imagine that Dr. George, as an attorney, would not have been placed on notice that EPA might be a proper defendant. But, unfortunately for the plaintiff, that is not the real issue under *Rule* 15(c)(3)(B). This is not a case of a mistake in identity.

It is clear from the pleadings, as well as the facts, that plaintiff correctly identified Zurbrugg for its role in administrative and supervisory negligence. As stated by defense counsel at the hearing on the motion, plaintiff has accomplished exactly what he set out to do, *i.e.* to sue the Hospital for administrative supervisory negligence in the hiring, evaluation, and supervision of its Emergency Room physicians. Plaintiff does not claim to have made a mistake in identifying the Hospital as a defendant in this context, but plaintiff now seeks to name others who have also played a role.

Plaintiff's citation to *Esnouf v. Matty*, 635 F.Supp. 211 (E.D.Pa.1986) is of little assistance. In *Esnouf,* the court permitted the plaintiff to amend the complaint against an independent contractor for medical services. *Esnouf* is a federal civil rights case with pendent medical malpractice claims. In the original complaint, the *pro se* plaintiff stated that the defendant nurse was an employee of the prison when in fact she was employed by an independent contractor. It was not until the nurse brought a motion for summary judgment, wherein she disclosed that she was not an employee of the prison, that the *pro se* plaintiff realized her error. The summary judgment motion was filed before the statute of limitations had run. Thereafter, plaintiff retained an attorney who filed a motion to amend the complaint beyond the statute of limitations period. The court granted plaintiff's motion to add the independent contractor. In so doing, the court focused on the defendant's knowledge of the plaintiff's mistake. Specifically, although the plaintiff may have been unaware of the contractor's involvement, the contractor had notice of the action through its employee, the defendant nurse, and would "certainly have been aware of the fact that, but for plaintiff's lack of sophistication in pleading, it would have been joined as a party as soon as it was identified as Ryan's true employee." *Id.* at 214.

Plaintiff's reliance on *Esnouf* is not on target. First, the attorney who drafted the complaint in this case does not lack the sophistication of the *pro se* plaintiff in *Esnouf.* Further, although the *Esnouf* court did not elaborate on the allegations set forth in plaintiff's original complaint, the court had no doubt that there was a clear mistake in identity sufficient to allow relation back under *Rule* 15(c). Here, there is no clear, unambiguous mistake in identity.

The rub in this matter is that there is no bright line distinction between who performed what supervisory responsibilities; EPA and the Hospital had similar roles, and thus, there is no one proper party. Plaintiff intended to sue the Hospital for

administrative and supervisory negligence. It is not apparent from the face of the complaint that the plaintiff intended to sue culpable, but unknown parties, in the Hospital's stead. In fact, it is more than clear that plaintiff is attempting to *add* parties and not to *substitute* new defendants for a mistakenly identified original defendant. This is exhibited by plaintiff's continued prosecution of the complaint against the Hospital on all counts. Certainly, plaintiff does not suggest that the second count against the Hospital be dismissed if the proposed new defendants are added. Indeed, plaintiff seeks to expand the second count against the Hospital by bringing in additional Hospital administrators. Thus, plaintiff has placed himself in the proverbial Catch–22 situation. He simply can't have it both ways.

In conclusion, this court has determined that the plaintiff has failed to satisfy both factors, as he must, under *Rule* 15(c)(3), regarding notice and mistake. Although it is questionable whether the defendants, EPA, and Dr. George [21], knew or should have known by reading the complaint that certain of the allegations applied to them, that begs the question of *Rule* 15(c)(3)(B). There has not been a mistake in identity. It is clear that the plaintiff does not intend to substitute these new defendants for a mistakenly named defendant in the original complaint. A fair reading of the complaint reveals what the plaintiff intended to do: sue the Hospital for administrative and supervisory negligence. Plaintiff did not intend to sue EPA and Dr. George *in lieu of the Hospital.* Therefore, since plaintiff has failed to satisfy the requirements under *Rule* 15(c)(3), plaintiff's motion to amend his complaint to add new defendants is denied as time barred.

### ORDER

IT IS on this 28th day of April, 1992,

ORDERED THAT the plaintiff's motion to amend his complaint to add Kenneth

Kozloff, George Hartnett, · EPA, James George, M.D., Ronald Sexton, and Steven Oxler, M.D., as defendants, in this matter be and is hereby denied.

---

**21.** Plaintiff's motion to add Kozloff, Hartnett, Sexton, and Oxler as defendants must be denied at the outset since they failed to receive notice of plaintiff's claim within the specified period under the Rule. Thus, having failed to satisfy *Rule* 15(c)(3)(A), the mistake factor is not even reached as to these parties.